No. 20,752.

MARTIN CARROLL, doing business as THE MARTIN CARROLL COMPANY, *Appellee,* v. J. D. BOWERSOCK, doing business as THE LAWRENCE PAPER MANUFACTURING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Repairs to Building—Partial Performance—Building Destroyed by Fire—Remedy of Contractor.* In an action by a contractor to recover for part performance of a contract to construct a reënforced concrete floor in a warehouse which burned before the floor was completed, recovery can not be predicated on the fact that the owner declined, on request of the contractor, to rebuild the warehouse, or on the fact that the owner collected insurance on the building, purchased before the contract was made.

Carroll v. Bowersock.

2. SAME. In such a case recovery is limited to the amount of contract work done which at the time the structure was destroyed had become so far identified with it that the material furnished and labor performed would have inured to the owner's benefit as contemplated by the contract if destruction had not occurred.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed April 7, 1917. Reversed.

*M. A. Gorrill,* of Lawrence, *Justin D. Bowersock,* and *Robert B. Fizzell,* both of Kansas City, Mo., for the appellant.

*S. D. Bishop,* of Lawrence, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover for part performance of a contract to construct a reënforced concrete floor in a warehouse which was destroyed by fire before the floor was completed. The plaintiff recovered and the defendant appeals.

The contract was formed by acceptance of the following proposal:

"We hereby propose to furnish all labor and material, and construct reënforced concrete floor in warehouse with necessary columns and column footings, using Turner System of reënforcing as designed by C. A. P. Turner of Minneapolis, Minnesota. This floor to consist of a 7" rough slab, mix-1-2-4, with a ¾" finish top, mix-1-2-, for the sum of Eighteen Hundred and Twenty-five ($1825) Dollars.

"This floor to be designed for a working load of 400 lbs. per sq. ft., and a test load of 800 lbs. per sq. ft., and is guaranteed to comply in all respects with these requirements.

"We propose to use the old floor now in place for forms for concrete, but will cut the old floor away from walls and remove all or part of the upper floor, the sub-floor and joists to remain in place. We are to have the use for construction purposes of any of the old lumber removed.

"We will begin the work when the details are received or within two weeks from this date, and complete same within two weeks after reënforcing steel is received.

"Payment for this work to be made as follows:

"$600.00 when footings and reënforcing steel are in place.

"$600.00 when concrete of floor slab is poured.

"$375.00 when work is completed.

"The balance of $250.00 to be retained for sixty days, and to be due and payable at that time providing contract has been satisfactorily completed.

"It is also agreed that the Lawrence Paper Manufacturing Co. will have the right to test this floor with a superimposed load of 800 lbs. per sq. ft., sixty (60) days after completion of same."

The plaintiff gave testimony abstracted as follows:

"That the first work to do under the contract was putting in concrete footings, then building pillars on these footings, then laying the concrete floor on top; that the columns are given form by building wooden boxes the desired height, putting in reënforcing rods connected at the bottom with dowels, and pouring the boxes full of concrete; that then the floor rods are so laid so that they come over into a bell on top of the column made by bending the column rods over horizontally in four directions at the top, and running the floor rods into the bell so formed; that when he last saw the building the footings were all in, the column rods set up and forms made, but no floor rods had been laid; that no cement had been poured in the columns at the time of the fire, and very few floor rods had been put in place; that no lumber was used in the building, except in the temporary forms for columns intended to be later removed; that nails amounting to $4.40 were the only hardware that went into the construction, and this went into the forms; that there should be a credit of $6.40 on the cement bill for returned sacks; that the cement, sand and rock went into the footings; that the upright rods in the columns were wired together, but not fastened to the building; and that some spirals and some column rods were not yet in place."

The court stated the following findings of fact and conclusion of law:

"FINDINGS OF FACT.

"The plaintiff entered upon the performance of the work in harmony with said contract, and worked for about three weeks. Before commencing the work he procured blue prints to be prepared therefor by an engineer at an expense of..................................... $85.00
Prior to the fire hereinafter mentioned he actually used of the
steel for reënforcement........................... In value    248.63
Labor for forms for cement.........................   "    "    28.80
Hardware ..........................................   "    "     4.80
Cement ............................................   "    "    23.20
Sand and rock......................................   "    "    17.20
Labor .............................................   "    "   319.90
Some miscellaneous items...........................   "    "     3.65
Expended for drayage...............................   "    "     3.15
Blacksmithing .....................................   "    "     6.50
In addition to these he paid freight on tools......   "    "     7.25
Railroad fare for men..............................   "    "     5.95

"The reasonable value of superintending the work and for use of tools is ten per cent of the cost of the material and work actually used in the improvement.

"At the end of the third week, the building was totally destroyed by fire, without fault of either party to the contract. It was insured in the condition in which it was before the plaintiff commenced work, but there was no insurance upon the improvements made by the plaintiff. The

Carroll v. Bowersock.

defendant collected the insurance, and failed and refused to reconstruct the building upon demand of the plaintiff, so that it was impossible for the plaintiff to complete his contract.

### "CONCLUSION OF LAW.

"The plaintiff in this case should recover from the defendant a judgment for $698.09, the same being made up as follows:

| | |
|---|---:|
| Steel actually used | $248.63 |
| Lumber used | 28.80 |
| Hardware used | 4.80 |
| Cement used | 23.00 |
| Cost of drayage | 3.15 |
| Cost of blacksmithing | 6.50 |
| Cost of sand and rock | 17.20 |
| Cost of superintending and use of tools | 63.46 |
| Money paid for labor and miscellaneous items | 323.55 |
| | $698.09" |

It is apparent that the court permitted recovery for substantially what the plaintiff had done by way of performance of the contract before the fire.

The contract was to place the floor in a specific warehouse. Destruction of the warehouse without fault of either party put an end to construction of a floor in that warehouse. No warehouse except the one destroyed having been contemplated or contracted about, the defendant could not be charged with delinquency for not building another. To do so would be to charge him with breach of an obligation which he did not assume. If continued existence of the particular warehouse to which the contract related were not taken for granted by both parties, the plaintiff would be bound by his contract and could not recover at all, no concrete floor having been constructed.

It was not material that the defendant collected insurance on the warehouse, purchased before the contract was made. The insurance covered nothing but property of the defendant. He paid for the insurance and was entitled to it, just as the plaintiff would have been entitled to insurance on his property, had he seen fit to insure. If any part of the plaintiff's labor and material was incorporated into the insured building, so that the insurance covered it as substance of the structure, the plaintiff can recover, if at all, not because of the insurance, but because of the incorporation.

18—100 KAN.

If a contractor should engage to furnish all labor and material and build a house, and the house should burn before completion, the loss falls on him. If a contractor should engage to refloor two rooms of a house already in existence, and should complete one room before the house burned, he ought to be paid something. So far the authorities are in substantial agreement.

The principle upon which the contractor may recover in a case of the character last instanced has been variously stated. Sometimes it is said that it was a material and substantive part of the contract on the owner's side that he would have the house in existence as long as might be necessary for the contractor to do the work. This statement of the principle arbitrarily attaches to the contract a warranty which the parties did not put there, and places the owner in default when he has been guilty of no wrong. Impossibility of performance because of destruction of the building was not contemplated by either party. Performance was prevented without fault of either party, and the true rule is that neither party can be charged with delinquency because the contract can not be fulfilled. (Annotation, L. R. A. 1916 F, 10, 52.)

The contractor can not give and the owner can not obtain that which they contracted about. Neither one can complain of the other on that account, and the law must deal with the new situation of the parties created by the fire. The owner can not be called on to reimburse the contractor merely because the contractor has been to expense in taking steps tending to performance. A contractor may have purchased special material to be used in repairing a house, and may have had much mill work done upon it. If the material remain in the mill, and the house burn, there can be no recovery. If the milled material be delivered at the house ready for use, and the house burn, there can be no recovery. It takes something more to make the owner liable for what the contractor has done toward performance. The owner must be benefited. He should not be enriched at the expense of the contractor. That would be unjust, and to the extent that the owner has been benefited the law may properly consider him as resting under a duty to pay. The benefit which the owner has received may or may not be equivalent to the detriment which

Carroll v. Bowersock.

the contractor has suffered.  The only basis on which the law can raise an obligation on the part of the owner is the consideration he has received by way of benefit, advantage, or value to him.

The question whether or not the owner has been benefited frequently presents difficulties.  Sometimes the question is answered by the owner's own conduct, as when by taking possession, or by insuring as his own property, or by other act, he evinces a purpose to appropriate the contractor's material and labor.  Sometimes the circumstances are such that the owner is precluded from rejecting the fruits of the contractor's efforts if he would, as when one room is finished under a contract to refloor two.  In such cases it merely confuses the matter to bring in the terms "acceptance," "assent," and similar expressions indicative of the owner's attitude.  If he should pay, it is not because assent or acceptance of benefit is "implied," or because he is "regarded as accepting benefit," but because of the fact that he has been benefited.

The test of benefit received has been variously stated.  Sometimes it is said that benefit accrues whenever the contractor's material and labor, furnished and performed according to the contract, have become attached to the owner's realty.  The facts of particular cases suggest different forms of expression.  After considering all the authorities cited in the briefs, the court is inclined to approve, for the purposes of this case, the form adopted by the supreme court of Massachusetts in the case of *Young v. Chicopee,* 186 Mass. 518, cited by the plaintiff.  The action was one for labor and material furnished to repair a bridge destroyed by fire while the work was proceeding.  The contract required at least half of the material to be "upon the job" before work commenced.  The contractor complied with this condition, and distributed material "all along the bridge" and on the river bank.  A portion of the material thus distributed but not wrought into the structure was destroyed by fire.  Liability for work done upon and material wrought into the structure was not disputed, but the contractor sought to make good his entire loss.  The court said:

"In whatever way the principle may be stated, it would seem that the liability of the owner in a case like this should be measured by the amount

of the contract work done which, at the time of the destruction of the structure, had become so far identified with it as that but for the destruction it would have enured to him as contemplated by the contract." (p. 520.)

Applying the test stated to the facts of the present controversy, it is clear that the plaintiff should recover for the work done in cutting the old floor away from the wall and in removing such part of the old floor as was necessary. The warehouse was improved to that extent by labor, the benefit of which had inured to the defendant when the fire occurred. If the fire had not occurred, the undesirable floor would have been out of the way, precisely as the contract contemplated. Likewise, the contractor should recover for the completed concrete footings.

The contractor should not recover for material furnished or labor performed in the construction of either column or floor forms. They were temporary devices, employed to give form to the structure which was to be produced. They were not themselves wrought into the warehouse, were to be removed when the work was completed, and inured to nobody's benefit but that of the contractor. The contractor should not recover for either upright or floor rods, or for the labor of putting them in place. While the rods were wired together, they were not attached to the building and would not have been wrought into the structure until the concrete was poured. If the fire had not occurred the contractor could have removed the rods without dismembering or defacing the warehouse, and the defendant could not have held the rods as amalgamated into the fabric of his structure. There should be no recovery for superintendence and use of tools, except as regards that part of the work done which had become identified with the warehouse itself. Other items sued for should be allowed or disallowed by application of the principle indicated.

The rule adopted and applied has been foreshadowed by utterances of the court in earlier cases. In the case of *Duncan v. Baker*, 21 Kan. 99, an entire contract for personal service was partially performed when it was terminated by the fault of the employee. He was allowed to recover for what the

work done was reasonably worth, less damages for his breach of the contract. In the course of the opinion it was said:

"Suppose a miller purchases a thousand bushels of wheat for a thousand dollars, the wheat to be delivered within one month; he receives the wheat as it is delivered, and grinds it into flour; when the vendor has delivered 500 bushels he refuses to deliver any more: what choice has the miller, except to retain what he has already received? This kind of supposition will also apply to the purchase and sale of all other kinds of articles, where the purchaser on receiving them changes their character so that he can not return them. Or suppose that an owner of real estate employs a man to build or repair some structure thereon for a gross but definite sum, the owner of the real estate to furnish the materials or a portion thereof in case of building, and either to furnish them in case of repairing, and the job is only half finished: what choice has the owner of the real estate with reference to retaining or returning the proceeds of the workman's labor? This kind of supposition will also apply to all kinds of work done on real estate, and will often apply to work done on personal property. Of course, in all cases where the employer can refuse to accept the work and does refuse to accept it or returns it, he is not bound to pay for it unless it exactly corresponds with the contract; but where he receives it and retains it, whether he retains it from choice or from necessity, he is bound to pay for the same what it is reasonably worth, less any damage that he may sustain by reason of the partial nonfulfillment of the contract. Of course, he is not bound to pay anything unless the work is worth something, unless he receives or may receive some actual benefit therefrom; and where he receives or may receive some actual benefit therefrom, he is bound to pay for such benefit (and only for such benefit), within the limitations hereinbefore mentioned." (p. 108.)

In this case nonperformance was not the result of the contractor's fault, and no damages can be deducted on that account. In other respects the doctrine stated applies.

The defendant says he had a right to a specific kind of completed floor which he could test and which would comply with a prescribed test, and that cutting away the old floor from the walls of the building and concrete footings for a floor which was never laid were of no value to him. The test is whether or not the work would have inured to his benefit as contemplated by the contract if the fire had not occurred. The cutting away of the old floor was done according to the contract, and the defendant had the benefit of that work as soon as it was finished. The evidence was that putting in the concrete footings was the next step in the construction of the concrete

floor. Those footings would have inured to his benefit, in accordance with the contract, if the fire had not occurred. They became a part of his warehouse. Unless he could reject them for want of substantial compliance with the contract so far as they were concerned, he was benefited by them at the time of their incorporation into his structure. Test of a completed concrete floor was one of the things rendered impossible by the fire.

The case of *Kanzius v. Jenkins*, 98 Kan. 94, 157 Pac. 417, is cited by the defendant. In that case a construction company agreed with a board of county commissioners to construct a bridge with a concrete floor. The floor was laid in the latter part of March. The night following there was a sudden change of temperature, which resulted in freezing and disintegrating the concrete, so that the floor had to be relaid. It was held that the loss caused by the freezing of the concrete should be borne by the contractor. The case is not applicable here. The occurrence of freezing weather in March was a mere embarrassment to performance. It did not render performance impossible, and consequently did not excuse the promissor. (Annotation, L. R. A. 1916 F, 10, 31.)

The judgment of the district court is reversed, and the cause is remanded with direction to take such additional evidence as may be necessary and determine the rights of the parties according to the views which have been expressed.

JOHNSTON, C. J. (dissenting) : I am of the opinion that the upright rods set up and tied together were a part of the building, and a recovery for them should be allowed.

DAWSON, J.: I concur in this statement.