No. 25,778.

J. A. Fritts, *Appellant,* v. Eugene S. Quinton, *Appellee.*

SYLLABUS BY THE COURT.

1. Contracts—*Part Performance—Quantum Meruit—Measure of Recovery.* One who has contracted to accept as compensation for his services a share of the proceeds of a business venture is not entitled, when he has broken his contract, to recover the reasonable value of his services in cash as for wages; and any compensation due him upon *quantum meruit* must take into account the terms of his contract, and must be based on the benefits conferred on the other party to the contract less any damages sustained by such other party by reason of the breach of the contract.

2. Same—*Employment—Share in Enterprise—Arbitrary Termination—No Recovery.* Defendant owned a farm, brood sows, feed and equipment adapted for hog-raising. He made a contract with plaintiff for his services on the farm, whereby plaintiff was to have the use of a house and garden, and feed for a cow, and a share in certain poultry on the farm, and a share of the proceeds of the sales of all hogs bred, reared and marketed on the farm under plaintiff's care and management. It was also agreed that the contract could be terminated on six months' notice by either party, and the contract also stipulated as to what plaintiff's interest in all pigs bred and partly reared by him should be on the termination of the contract. Plaintiff entered upon the employment, but after four months' services he quit on two weeks' notice and sued for the reasonable value of his services, without regard to the compensation stipulated in his contract of •employment. *Held,* plaintiff was not entitled to recover.

Appeal from Shawnee district court, division No. 2; George H. Whitcomb, judge. Opinion filed March 7, 1925. Affirmed.

*A. E. Crane,* and *B. F. Messick,* both of Topeka, for the appellant.

*J. J. Schenck,* of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, J.: The plaintiff sued the defendant for the value of his services for four months. The services were performed pursuant to a contract in which plaintiff had undertaken the task of working, managing and running defendant's hog farm for a share of the proceeds of the sales of all pigs bred and grown under plaintiff's care. Other considerations passing to plaintiff were the use of the farm house, a garden, half the chickens and eggs produced from defendant's poultry on the farm, feed for this poultry, and pasture and keep for plaintiff's cow.

The terms of the contract covering plaintiff's interest in the pigs and providing for the termination of the contract and for the settlement of plaintiff's interest in the event of such termination stipulated:

"That said J. A. Fritts is to receive the further compensation of $1 per hundred of all pigs raised upon the farm, at the time of sale, not less than five months of age, during this employment, the said Eugene S. Quinton to furnish not less than twenty-five (25) head of sows, with necessary number of boars for proper breeding, and to pay all necessary expenses in the raising and feeding the hogs; in fact everything in conducting and running the farm.

"It being further agreed and stipulated that either party may terminate his contract upon six months' notice in writing at any time.

"It is further stipulated and agreed that in the event that this contract shall be terminated by either party that the said J. A. Fritts is to receive at such time one dollar a hundred for all pigs raised for market then upon the farm at the *pro rata* basis of 200 pounds in six months of age—that is to say, if this contract should be terminated, as herein provided, and there were any pigs on the farm born during the employment of J. A. Fritts, and are one month old, the said J. A. Fritts is to receive one-sixth of one dollar a hundred on a basis of 200 pounds at six months of age; if two months, one-third; if three months, one-half, and so on."

Pursuant to this contract plaintiff commenced to work on January 27, 1922, and worked four months, doing all the usual work pertaining to the care of a herd of hogs at that season of the year. On May 10 he notified defendant that he would leave on May 17, but did not leave until May 27, at which time he quit. During the time he was in charge of the farm defendant advanced to plaintiff $50.

Plaintiff brought this action, setting up the written contract, and alleging that he performed everything required of him by its terms for a period of four months, and that his services were reasonably worth $75 per month, and prayed judgment for $300 less the $50 advanced to him by defendant.

On issues joined, a jury was waived; evidence was adduced by the litigants, and judgment was entered for defendant. Plaintiff appeals, and presses on our attention precedents of this court which hold that although a party to a contract of employment wrongfully breaches that contract before it is fully performed, he is entitled to recover the value of the benefits which the other party has actually received and retained as a result of the services of the party who breached the contract, less any damages sustained by the other party as a consequence of such breach. This doctrine is thoroughly

Fritts v. Quinton.

established in this jurisdiction in a case of labor (*Duncan v. Baker,* 21 Kan. 99), in cases of contractors (*Barnwell v. Kempton,* 22 Kan. 314; *School District v. Boyer,* 46 Kan. 54, 26 Pac. 484; *School District v. Lund,* 51 Kan. 731, 735, 33 Pac. 595; *Carroll v. Bowersock,* 100 Kan. 270, 276, 164 Pac. 143), and in cases of care and maintenance (*Holland v. Holland,* 97 Kan. 169, 155 Pac. 5; *Simmons v. Shafer,* 98 Kan. 725, 160 Pac. 199; *Masterson v. Masterson,* 100 Kan. 108, 110, 163 Pac. 617).

The rule just stated was conceived to satisfy modern and enlightened notions of justice and to displace "the narrow, technical and illiberal rule of the common law forbidding recovery on *quantum meruit* after partial performance" (*Cooper v. Seaverns,* 81 Kan. 267, 281, 105 Pac. 509), but there are obvious limits to its application, and it will frequently be difficult or impossible to apply it where the compensation was to be something other than money. Here the plaintiff's agreed compensation, other than the use of the house and garden, keep for his cow and a share of the poultry products, was to be a share of the proceeds of the sale of pigs born and reared on the farm under his management. If plaintiff had fully performed his contract for a sufficient length of time to breed, rear and sell a number of pigs, he would have been entitled to receive one dollar per hundredweight for all pigs thus sold at the age of five months or more. If plaintiff had reared a herd of pigs under this contract and they had died of ·cholera when ready for market, his compensation would have been nil. In such a situation plaintiff could not be heard to say: "I choose to breach my contract of employment for a share of the proceeds of these pigs, and elect to claim compensation in money for the reasonable value of my services under the equitable rule of law announced in ·*Duncan v. Baker,* supra, and consistently followed in all the later Kansas cases!"

In *Smart v. Burquoin,* 51 Wash. 274, the plaintiffs rented a tract of land from the defendant for a share of the crop. Plaintiffs plowed a part of the land, but before a crop could be raised and harvested therefrom the lease was terminated. Plaintiffs sued on *quantum meruit* for the value of the plowing. The court said:

"In this case the pleadings show that appellants seek to recover upon a *quantum meruit* the value of their plowing, while holding under a lease with the rent reserved in kind, with no promise or obligation whatever upon the respondent to pay in money for any work done in tilling the land. Therefore, whether they abandoned or quit upon notice becomes immaterial. If they

·abandoned, they are without remedy; if they were evicted, they have mistaken their remedy." (p. 277.)

In *Day v. Farley*, 100 Mo. App. 633, a barber agreed to select and buy a tombstone from a dealer for $50, the seller agreeing to accept fifteen dollars' worth of barber services as part payment. The barber rendered shaving services to the seller to the amount of $15, but failed to select the tombstone, and sued the dealer in tombstones for $15, invoking the doctrine of *quantum meruit,* and conceding that his claim was subject to diminution for any damages the tombstone dealer might be able to show for the barber's failure to select and purchase the tombstone. The court held that the barber was not entitled to recover, saying:

"The case is no more or less than if plaintiff had contracted for the tombstone and had paid on the purchase price, fifteen dollars in cash. It ought not to be contended that in such case he could recover back the money, in case of defendant's willingness and offer to carry out the contract. Plaintiff is relying upon rules of law, which, it seems to us, are without application to the case."

To the same effect in principle are *Roundy v. Thatcher*, 49 N. H. 527, and *Roberts v. Wilkinson,* 34 Mich. 129, while *Wanhscaffe v. Pontoja* (Tex. Civ. App. 1901), 63 S. W. 663, is virtually to the contrary.

No contract of employment which contemplated a payment of wages to plaintiff was ever made by the parties. By wrongfully breaching his contract plaintiff cannot require defendant to pay him wages. He was to have a share in the proceeds of the sales of pigs reared by his own labor. Compensation for both plaintiff and defendant was to be made out of a successful prosecution of the hog-raising business. Until such pigs had been reared and sold there was no wherewithal to pay plaintiff for his labor nor to pay defendant for the use of his farm, the consumption of his feed, and for his capital invested in the swine which were expected to breed and farrow the anticipated pigs.

On cross-examination the plaintiff testified:

"Q. Didn't I tell you that it was the pigs born on the farm during your employment only that you had an interest in? A. Yes, that is what you told me."

It appears that the parties stipulated in advance as to their rights in the event of a termination of this contract by either party. It was assumed that pigs could be grown to weigh 200 pounds at six months of age; and if plaintiff should quit, the same basis as

plaintiff's compensation for six-months-old pigs reared and sold by him, one dollar per hundredweight, was to be taken for determining his compensation on pigs not old enough for market—for pigs one month old, one-sixth of one dollar per hundredweight; "if two months, one-third; if three months, one-half, and so on."

It is therefore apparent, not only that there was no legal foundation for plaintiff's claim, but that the contract itself governed his rights when he breached his contract. If plaintiff had offered any evidence showing that any pigs had been born during his period of service the terms of the contract could have been invoked to correctly measure his compensation. Indeed, if he had produced any evidence showing that defendant had received and retained any benefits resulting from plaintiff's services, and some tangible evidence of their value had been adduced, it might have been practicable to apply the rule of law invoked by plaintiff and award him some compensation based thereon. But it is altogether out of the question to ignore the contract and allow him compensation as for wages. Defendant never obligated himself to pay on any such basis, nor on any other basis than a share in the proceeds of the sale of pigs marketed, and a proportionate share of the pigs born under plaintiff's care and not ready for market. And while plaintiff proved what his services were reasonably worth as a farm servant or farm manager, there was no evidence to show what, if any, benefit these services were worth to defendant. And since plaintiff neither claimed nor proved any right to compensation under his contract nor any benefits from his services received and retained by defendant, the judgment of the trial court was not erroneous.

The judgment is therefore affirmed.