[File No. 6364.]

JOHN OLSON, Respondent, v. J. B. DAVIS, Appellant.

(262 N. W. 332.)

Opinion filed August 16, 1935.

*Charles L. Crum,* for appellant.

*Emil A. Giese* and *A. T. Nelson,* for respondent.

BURKE, Ch. J.   This action originated in a justice of the peace court

and from a judgment entered therein for the plaintiff an appeal was taken to the district court, where the case was duly tried to a jury and a judgment, upon a verdict in favor of the plaintiff, was duly entered, from which the defendant appeals.

The complaint alleges that from the 5th day of September, 1933 to the 16th day of June, 1934 the plaintiff rendered services to the defendant, at his request, as manager of what is known as the J. B. Davis ranch. That the services were performed pursuant to the said agreement and were reasonably worth the sum of $180 and a judgment is demanded for such amount.

For his answer, the defendant alleges that on or about the 5th of September, 1933, at the special instance and request of the plaintiff, he employed said plaintiff as a general farm hand for a term expiring September 5, 1934 with the understanding that a written contract would be executed by the plaintiff and defendant and specifically providing the manner and amount to be received by the plaintiff from the defendant. That said plaintiff and defendant did enter into a written contract on May 27, 1934, a copy of the contract was attached to and made a part of the answer. The defendant also pleads a counterclaim, specifically describing losses sustained through the negligence and carelessness of the plaintiff while in the employ of the defendant.

The plaintiff, in his testimony, admits the signing of the contract and the contract was offered in evidence as a part of his cross-examination and a motion made to dismiss the action for the reason that plaintiff's remedy was upon the express contract and could not be maintained upon an implied contract. The motion was denied and appellant claims this was error.

It is well settled that where work and labor is done under a special contract, to be paid for in money, and the contract is fully performed so that nothing remains to be done but to make payment, the party who performs the labor is not obligated to sue on the contract but may maintain an action for the reasonable value of his services. But when the compensation is to be paid in commodities other than money the general rule is that the remedy is on the contract.

The plaintiff and defendant agree that in the fall of 1933 the plaintiff moved on to the ranch under an agreement with the defendant that the defendant was to furnish the plaintiff and his family with meat,

potatoes, flour, fruit and coal; that the defendant was to furnish all the feed for the stock and for the chickens and turkeys and plaintiff was to have one-half of the chickens and one-third of the lambs from 227 ewes born during the lambing season following; that there were several conversations between them relating to the terms of the agreement. Both testified that at the time of the conversation they agreed that their contract should later be put in writing. There is no oral testimony as to how long the contract should continue. On the 19th of May, 1934, they did sign and acknowledge a written contract. There is very little difference between the written contract and the testimony of the plaintiff. His testimony is that he was to be paid in lambs and the written contract provides: "That the compensation of the party of the second part shall be one-fourth of the lambs born to a certain herd of ewes consisting of approximately 226 head of ewes now in the possession and under the control of the party of the first part on his ranch about eighteen miles south from the town of Leith, Grant County, North Dakota. Provided, that if the party of the first part does not see fit to furnish a herder for said sheep that then and in that event it shall be the duty of the party of the second part to furnish such herder and the compensation of said second party shall be one-third of the lambs born to said ewes during the lambing season of 1934."

The written contract has the further provision, namely: "It is further mutually agreed by and between said parties, as a material part of the consideration of this agreement, that in the event of draught and failure of pasturage and crops, or in the event the first party shall for any reason deem it to his best interest to terminate this agreement prior to the expiration thereof, that said party of the first part may do so by notifying the said party of the second part that this agreement is terminated, and in that event the said second party and his family will immediately vacate said premises. Provided, that in the event of the termination of this agreement prior to its expiration the full compensation inuring to the party of the second part for his said services shall be that portion of the proceeds arising from the sale of said lambs which correspond to the length of time said second party shall have been employed by the party of the first part under the provisions of this agreement. Provided, further, that the title and right of posses-

sion of all said lambs shall vest and remain in the party of the first part until he shall have sold the same at such time as he deems advisable."

Section 5889, Compiled Laws 1913, provides that "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Allgood v. National Ins. Co. 61 N. D. 763, 240 N. W. 874.

The written contract supersedes the oral negotiations; but there is no conflict between the oral negotiations and the written contract that affects the remedy, both provide that the plaintiff is to be paid for his services in lambs raised during his service. The oral negotiations do not say when, but the written contract, which controls, provides "that in the event of the termination of this agreement prior to its expiration the full compensation inuring to the party of the second part for his said services shall be that portion of the proceeds arising from the sale of said lambs which correspond to the length of time said second party shall have been employed by the party of the first part under the provisions of this agreement." The case comes squarely within the rule excluding actions on quantum meruit.

In the case of Fritts v. Quinton, 118 Kan. 111, 233 P. 1036, 40 A.L.R. 31, the defendant owned a farm, brood sows, feed and equipment. He made his contract with the plaintiff for his services on the farm, whereby the defendant was to have the use of the house, garden, feed and the sows and a share of certain poultry on the farm and the proceeds of the sale of the hogs born and reared on the farm under plaintiff's care and management. It was agreed that the contract could be terminated on six months' notice by either party and the contract stipulated as to what his interest was in the pigs bred and reared by him at the termination of the contract. After four months of service the plaintiff quit and sued on quantum meruit. The contract is very much like the contract in the instant case and the facts are very much the same, except that in the Kansas case the plaintiff quit after four months' service. The court said: "No contract of employment which contemplated a payment of wages to plaintiff was ever made by the parties. . . . He was to have a share in the proceeds of the sales of pigs reared by his own labor. Compensation for both plaintiff

and defendant was to be made out of a successful prosecution of the hog-raising business. Until such pigs had been reared and sold there was no wherewithal to pay plaintiff for his labor nor to pay defendant for the use of his farm, the consumption of his feed, and for his capital invested in the swine, which were expected to breed and farrow the anticipated pigs." The court cites and quotes with approval Smart v. Burquoin, 51 Wash. 274, 98 P. 666, viz.: "The plaintiffs rented a tract of land from the defendant for a share of the crop. Plaintiffs plowed a part of the land, but before a crop could be raised and harvested therefrom the lease was terminated. Plaintiffs sued on quantum meruit for the value of the plowing. The court said: 'In this case the pleadings show that appellants seek to recover upon a quantum meruit the value of their plowing, while holding under a lease with the rent reserved in kind, with no promise or obligation whatever upon the respondent to pay in money for any work done in tilling the land. Therefore, whether they abandoned or quit upon notice becomes immaterial. If they abandoned, they are without remedy; if they were evicted, they have mistaken their remedy.'"

The theory of the law is that since there was no agreement for payment in money there can be no implied agreement for payment in money. In the Kansas case the court said: "Defendant never obligated himself to pay on any such basis, nor on any other basis than a share in the proceeds of the sale of the pigs marketed and a proportionate share of the pigs born under plaintiff's care and not ready for market." The authorities are reviewed at considerable length in the Kansas case and the notes following. 40 A.L.R. 34.

5 C. J. 1388, § 18 states the rule as follows: "If the agreement is to be carried out by defendant in some way other than by the payment of money, the general rule is that it must be declared on specially." Citing Alabama, Arkansas, Connecticut, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, Virginia, Wisconsin and England.

Under the title "Work and Labor," 71 C. J. p. 111, § 70, is the following: "As a general rule where, under a contract, the compensation for work and labor is payable otherwise than in money, it must be declared on specially."

It is clear that plaintiff has mistaken his remedy and the motion of the defendant to dismiss should have been granted. The judgment is reversed and the case dismissed without prejudice to the plaintiff bringing an action on the contract.

MORRIS, NUESSLE, CHRISTIANSON and BURR, JJ., concur.