No. 37,247

ROBERT GIESE, *Appellant*, v. VIRGIL WEEDEN, *Appellee.*

(196 P. 2d 207)

Opinion filed July 10, 1948.

*E. E. Kite*, of St. Francis, was on the briefs for the appellant.

*Robert Cram* and *D. H. Postlethwaite,* both of St. Francis, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: Robert Giese brought an action in justice court under the forcible entry and detainer statute (G. S. 1935, 61-1301 to 61-1314, incl.), charging Virgil Weeden with unlawful and forcible entry upon certain land and the subsequent unlawful and forcible detention thereof. Judgment was rendered for the defendant. Giese then appealed to the district court where, by agreement of the parties, the cause was tried by the district judge, and judgment was again rendered for the defendant. The plaintiff appeals.

At the close of the trial in district court, upon request of the plaintiff, the trial court made findings of fact and conclusions of law upon which its general judgment finding the defendant not guilty was based. We have examined the findings of fact and, while they are based upon conflicting testimony presented by a somewhat complex and confusing record, have concluded they are supported by the evidence and should be approved. They not only reflect the facts giving rise to the controversy but set them forth in as concise a manner as the state of the record permits. We therefore quote such findings in toto. They read:

"In the case of *Robert Giese v. Virgil Weeden,* No. 4498, the court makes the following findings or conclusions of fact.

"1. That for ten years or more Robert Giese farmed the east half of the Southeast Quarter of Section 23, Township 5 South Range 42 West, in Cheyenne County, Kansas, a cultivated tract of land upon which there is no buildings or habitations, and that the west half of the same quarter is in pasture and for the past three or four years the West Half has been rented from the original owner by the defendant and that arrangements for said land were made through Lloyd Weeden and that plaintiff consented thereto.

"2. That notices were served by Pauline Ketchum, the former owner, on October 29, 1946, and by Virgil Weeden on January 14, 1947, upon the plaintiff notifying him of the termination of his tenancy upon the 1st day of March, 1947 and demanding possession of the premises on March 1, 1947. That said notices described the entire quarter and that the notices were. served January, 1947, were not dated.

"3. That in the fall of 1946, the defendant Virgil Weeden purchased the premises, from the former owner Pauline Ketchum under contract, and in said contract he was given immediate possession, subject to the rights of the tenancy of Robert Giese. That the terms of said contract have been complied with by the defendant Weeden insofar as to entitle him to possession.

"4. That later said Virgil Weeden designating himself as landlord caused to be served on plaintiff an undated three-day notice to quit, vacate and sur-

render the entire quarter section of land within three days from the date thereof. Said notice was served by the Deputy Sheriff on March 4, 1947. This notice stated: 'and if for any reason you should fail, neglect or refuse so to do suit will be brought to eject you therefrom.' No suit of any kind has ever been brought by the defendant Virgil Weeden against the plaintiff Robert Giese to eject him from the land or for the possession thereof.

"5. That at the time said Robert Giese, the plaintiff first rented.the land he rented it through and with negotiations with the above mentioned Lloyd Weeden and at that time said Lloyd Weeden procured a lease in writing and same was properly executed by the then owner of the land and Robert Giese and said lease was for one year from March 1st to March 1st, and said lease has been lost by both parties and was not produced at the trial. All rents paid by said Robert Giese for his use and occupancy of said land were paid to Lloyd Weeden and he received the same and transmitted same, less his commission to the owner of the land; that all of the transactions Robert Giese had concerning the land were with and through said Lloyd Weeden and some three to six years ago, the number of years being uncertain, as no witness could fix the exact year, the plaintiff Robert Giese planted and cultivated a portion of said quarter section of land to corn and in August of that year, somewhere from the middle of the month to the first of September, the plaintiff went to said Lloyd Weeden and informed him that the hot dry weather had destroyed the corn and that there was no corn there and that he wanted to plant all said ground to wheat and wanted to know if he could have the land for another year and the said Lloyd Weeden told the plaintiff that that would be all right and the plaintiff did plant wheat upon said land and harvested the same at harvest time the next year and paid the rent to the said Lloyd Weeden. Thereafter said plaintiff continued to farm said land, raising corn, wheat, barley and oats from year to year; that neither plaintiff nor Lloyd Weeden stated the exact conversation had at this time, but that substance of it is as stated in this paragraph.

"6. That Giese did not plant any crop on the premises in the fall of 1946, that he did disc the wheat stubble and that some wheat had volunteered; that in discing said land the disc was lapped over one-half of the ground gone over the previous round.

"7. That any crop growing on the premises on the 1st day of March, 1947, was immature and was not a good stand of wheat and that it was good farming practice to plow it up in April, 1947.

"8. That while the plaintiff was occupying said land he built a fence along the south and east sides of said land and still has said fence on said land, but that defendant did not have to tear down any fence or open any gates in order to make an entry on said land.

"9. In the month of February, 1947, the exact date of the month not being shown by the testimony, the plaintiff and defendant met at a sale barn in the outskirts of St. Francis, Kansas, and there got into a heated argument about this land, the defendant Virgil Weeden told the plaintiff that he had bought the land and wanted it and was going upon it and farm it and the plaintiff Robert Giese told the defendant to stay off the land, that he had a crop of growing wheat thereon and that he was going to harvest it. There-

upon the parties engaged in a physical encounter and the defendant struck the plaintiff and gave him a black eye after plaintiff had first struck defendant.

"10. That after the first day of March, 1947, and until Weeden went on the premises Giese did not exercise any act of possession and he did not communicate in any manner with the defendant notifying him that he still held possession and intended to hold possession, although he may have inspected said land. after said date.

"11. There are no buildings or other habitable place upon the land in question, and the plaintiff for several years has been living in St. Francis, Kansas, and works for the County of Cheyenne on its roads and highways.

"12. That the plaintiff Giese made no claim to defendant for the possession of the premises after March 1, 1947, until a short time before the notice to vacate was served upon the defendant by him in July, 1947.

"13. That the defendant Weeden on or about April 21, 1947, went on the premises in the day time and commenced farming operations, after he had completed farming operations on other land; that he went on the land with a tractor pulling a two-bottom plow and plowed up the land that had been in wheat the year before, and on which there was some volunteer wheat, but not a good stand thereof and that he moved some horse machinery of plaintiff's which had not been used much for several years; that said machinery is still on the premises and was not moved far.

"14. That after the 1st day of March, 1947, there was no breach of the peace involving the possession of this land, no altercation, no conversation, no fight, no threatened breach of the peace whatsoever on this land or elsewhere.

"15. About the latter part of June or the first part of July, the plaintiff caused his attorney to write the defendant a letter requesting him to come to the attorney's office. Defendant received the letter and called at the attorney's office, whereupon demand was made upon defendant to return the possession of the land to the plaintiff and the defendant refused.

"16. Thereafter, and on the 9th day of July, 1947, the plaintiff prepared a notice to be served upon the defendant to quit and leave the land involved in this action, and said notice was served on the defendant on the 10th day of July, 1947, by the undersheriff of Cheyenne County, Kansas."

The trial court also made conclusions of law which read:

"1. That notices terminating the tenancy of Robert Giese as served by Pauline Ketchum and Virgil Weeden are in due form as provided by the Kansas statutes, and that said notices were sufficient to terminate the tenancy of plaintiff in the premises on March 1, 1947.

"2. That plaintiff Giese had no right of tenancy in and to the premises in question after March 1, 1947.

"3. That plaintiff Giese had no right to possession of said premises after the 1st day of March, 1947.

"4. That at the time the defendant Virgil Weeden entered upon the premises he was lawfully entitled to the possession thereof.

"5. That the entry of the defendant Virgil Weeden upon the premises was peaceably effected and no force was exercised in making the entry thereon.

"6. That the notice served by the plaintiff on July 10, 1947, was and is in proper form but ineffective because defendant not guilty of forcible entry and detainer or either.

"7. That the conversation between plaintiff and Lloyd Weeden did not constitute a new lease or fix a new term thereof, even if Weeden had authority, real or apparent, to make such a new lease or fix a new term thereof, or to do so orally would not have been in violation of the statute of frauds.

"8. That the defendant is not guilty.

"Judgment for defendant, costs taxed to plaintiff."

Based upon the foregoing findings and conclusions, judgment, as heretofore indicated, was rendered in favor of the defendant. A motion for a new trial was duly filed and overruled. The plaintiff then perfected this appeal.

When the argument advanced by appellant in his brief, in support of his numerous assignment of errors and his over-all claim that the judgment rendered by the district court was erroneous, is boiled down and analyzed it becomes apparent that he bases his right to a reversal of the judgment upon only three propositions. *First,* he contends that his right as a tenant on the land in question had not been terminated as of March 1, 1947. *Second,* he argues that even if his tenancy had been terminated he was in peaceable possession of such real estate and holding over after the expiration of his term. *Third,* he insists that while he was in such possession the appellee forcibly entered upon the premises and ejected him therefrom.

No question is raised by appellant as to the sufficiency of the notices given to terminate his tenancy if in fact and in law his rights as a tenant could have been terminated by appellee on March 1, 1947. What he actually contends is that the oral agreement made by him with the agent of the landlord several years prior to that date, as set forth in finding No. 5, resulted in the making of a new lease, the term of which expired on August 1 of each year and that after the date on which such agreement was entered into his tenancy could not be terminated except by the giving of a notice of its termination at least thirty days prior to the first day of August. The trial court found (conclusion of law 7) that no new lease was created as a result of the transaction on which appellant relies. Although there is much in the record to sustain such conclusion we need not debate the question. Following the date of the agreement on which he relies and after the expiration of its term, appellant continued in the possession of the

leased premises for a period of several years with the assent of his landlord. He thereby became a tenant from year to year (G. S. 1935, 67-502) of farm land whether he held under his original lease or under the alleged new one as claimed by him. In that situation his tenancy could be and was terminated by the notice served on him thirty days prior to the first day of March, 1947. G. S. 1935, 67-506 requires that in cases where tenants from year to year are occupying and cultivating farm lands the notice must fix the termination of the tenancy to take place on the first day of March except in cases where the holding over is under a written lease the terms of which provide for termination on another date. Appellant does not claim to be holding over under a written lease. It follows the trial court properly held that he had no right of tenancy or legal right to possession of the premises in question after March 1, 1947. The mere fact there was a volunteer crop of wheat growing on the land after that date or the fact, in the absence of any showing that his landlord had given him authority to do so, that the appellant in anticipation of that possibility had done some discing of the land on which the volunteer wheat was located in the fall of 1946 did not deprive appellee of his right to terminate the tenancy as provided by the statute or extend appellant's rights to possession and occupancy of the premises.

Appellant's second and third proposition and his contentions with respect thereto are overlapping and can be considered together.

It is not too clear from the trial court's findings and conclusions whether it concluded appellant was in the peaceable possession of the land in question on April 21, 1947, the date on which appellee took possession thereof. It goes without saying that unless it did its judgment must be upheld for appellee could not be found guilty of forcible entry upon his own real estate at a time when appellant had no possessory rights therein. For our purposes we shall assume the judgment was not predicated upon that premise but on the basis appellee's entry was peaceably effected while appellant was still in possession. Even so it should be pointed out that in the determination of appellant's last contention the appellee forcibly entered upon such land the trial court could properly take into consideration any or all of the facts set forth in findings of fact Nos. 7, 10, 11, 12 or any other facts and circumstances to be found in the record which might have given the appellee reasonable cause to believe that when he entered upon the land on April 21 the

appellant had abandoned or relinquished all claims thereto and that appellee's right to enter thereon was no longer a matter of dispute.

We come then to appellant's third and final contention. As it is given consideration the rule, so elemental as to require no citation of authorities in its support, that each action for forcible entry and detainer rests on its own facts in determining whether a forcible entry has been effected, must be kept in mind. Where—as here— the evidence is controverted the jury or the court, as the case may be, determines that issue from all the facts and surrounding circumstances and its decision is not to be disturbed if sustained by evidence.

In the instant case the evidence as to whether appellee's entry was lawful or unlawful, peaceable or forcible, was conflicting. By its findings of fact, particularly Nos. 7, 10, 11, 12, 13 and 14, all of which were supported by evidence, the trial court determined the issue raised by that disputed evidence adversely to appellant's contention. We have little difficulty in concluding such findings were ample to sustain its conclusion of law that appellee's entry upon the land in controversy was peaceably effected without exercise of force and its general judgment in his favor.

No useful purpose would be served by extended reference to the numerous forcible entry and detainer cases cited by appellant in support of his last contention. It suffices to repeat that each forcible entry and detainer action is dependent upon its own facts and state that when such decisions are examined it appears that none of them were determined upon facts and circumstances identical or even similar to those presented by the record in the case at bar.

The judgment is affirmed.