No. 37,298

HARRY J. FOX, *Appellant*, v. W. H. FLICK, *Appellee*.

(203 P. 2d 186)

Opinion filed March 5, 1949.

*Vincent G. Fleming*, of Larned, argued the cause, and *W. H. Vernon*, of Larned, was with him on the briefs for the appellant.

*Russell L. Strobel*, of Larned, argued the cause, and *Roscoe E. Peterson*, of Larned, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action by a landowner against his former tenant to determine the ownership of two-thirds of the wheat harvested in 1947 from certain lands. After hearing the evidence the trial court rendered judgment for defendant. Plaintiff has appealed.

On June 19, 1947, plaintiff filed a petition in ejectment (G. S. 1935, 60-2001) in which he alleged that he is the owner of the legal title to a described eighty-acre tract of land in Pawnee county and is entitled to the possession thereof, but that the defendant unlawfully keeps him out of possession of the land. Upon application of plaintiff the sheriff was appointed receiver to harvest and care for the wheat crop and bring the proceeds into court. Upon the hearing of defendant's motion to vacate the order appointing the receiver, the parties stipulated that defendant should harvest the wheat, deliver one-third of it to the plaintiff and that two-thirds of the wheat should be stored or sold and the proceeds impounded with the clerk of the court until the further order of the court, the stipulation not to operate as a waiver of the rights of either party to the two-thirds interest in the crop.

Defendant filed his answer in which he admitted plaintiff was the owner of the land and alleged that other than as later stated defendant from and after March 1, 1947, never has been in possession nor asserted any claim to the possession of the property, and at no time has asserted a claim to any interest in the title to the real property. He further alleged that in 1939 he and the plaintiff entered into an oral lease to the effect that defendant should farm the land and plant the same to wheat in the fall of 1939 and deliver to the plaintiff as rent therefor one-third of the grain harvested and threshed on the premises; that he did prepare the ground, furnish the seed, sowed the wheat in the fall of 1939, and harvested the same in the fall of 1940 and delivered to plaintiff one-third of the grain harvested; that thereafter and in the years 1940, 1941, 1942, 1943, 1944, 1945 and 1946 he continued from year to year as tenant of the plaintiff upon the land without any written lease and upon the same terms agreed upon in 1939 except as the same was modified to comply with the AAA farm program; that during the summer and fall of 1946, "while a tenant from year to year of said plaintiff as to said real estate," he prepared the ground and sowed it to wheat; that "on or about the twentieth day of December, 1946, said defendant was notified by said plaintiff of the termination of said tenancy as of March 1, 1947." He further alleged that he had harvested the crop maturing in July, 1947, and that he was entitled as his share thereof to two-thirds of the grain; that one-third of it had been delivered to the plaintiff "and that the general local custom within the locality of said premises . . . is that

a tenant is entitled to his tenant's share of a crop sown but not maturing before the expiration of his tenancy, and is further entitled to harvest said crop."

To this answer plaintiff filed a reply which contained a general denial of matters not admitted or which were inconsistent with the allegations of the petition and the reply and alleged that when defendant held over under his oral contract beyond the crop year of 1940, as alleged in his answer, he became a tenant from year to year and his tenure and occupancy of the premises became subject to termination as of March 1, 1941, and March 1 of each year thereafter; that defendant's tenancy of the premises was renewed and extended by mutual consent of the parties in the fall of 1940 by defendant's tilling the land, sowing the same to wheat with plaintiff's tacit or expressed assent, acquiescence, approval and ratification, and likewise by mutual consent of the parties defendant sowed wheat on the land in the fall of each of the years 1941, 1942, 1943, 1944 and 1945; that during the 1945-1946 winter crop-growing season, in the legitimate exercise of his rights as fee simple owner of the land, plaintiff specifically withdrew his assent, approval and ratification of defendant's further farming the land to winter wheat; that in an oral conversation with defendant in May, 1946, plaintiff notified defendant that he would not have the privilege of sowing winter wheat in the fall of 1946 for the reason that plaintiff had other plans for the use of the land, and that in the course of the conversation defendant assented to such notice, agreeing to surrender possession of the premises after the 1946 wheat harvest and to let plaintiff put into possession other tenants for the farming of winter wheat for the crop year of 1947; that on July 9, 1946, in a conversation between them, defendant again promised and agreed to surrender possession of the land; that thereafter and on July 10, defendant failed and refused to surrender possession and exercised dominion over the property, excluding plaintiff and his new tenants from the possession thereof; that defendant never did ask and receive permission, assent or approval of plaintiff to do any plowing or other tillage during the summer of 1946, or to sow on said land or to seed the same to winter wheat or other crop which could not be matured and removed prior to March 1, 1947; that defendant's tenancy from year to year was validly terminated by notice in writing as of March 1, 1947, and that since March 1, 1947, plaintiff has been the owner and entitled to the possession of the real estate,

including any crops which had not fully matured and which had not ceased to draw sustenance from the soil; that since March 1, 1947, defendant has been an intruder and a trespasser in his possesesion of the land and his claimed ownership as an agricultural tenant of the wheat crop growing thereon, and that defendant is not entitled to receive any part of the wheat crop grown in 1946 and harvested in 1947.

The trial started before a jury. Plaintiff's motion for judgment upon the pleadings and the opening statement of defendant's counsel was overruled. By stipulation the notice served on defendant about December 20, 1946, was received in evidence. It reads:

"Termination of Tenancy From Year to Year

"To W. H. Flick, Larned, Kansas: Take Notice that your farm tenancy from year to year of real estate situate in the County of Pawnee [describing the land], is hereby terminated as of March 1, 1947; and you are hereby notified that unless you quit, leave, vacate and surrender possession of said premises on or before March 1, 1947, suit will be brought to eject you. Dated at Larned, Kansas, this 20th day of December, 1946." (This was signed by plaintiff as owner.)

Plaintiff testified that he had been the owner of the real property all the years in question; that in the summer of 1939 he let defendant in possession under a verbal lease; that the following year, by mutual consent, the verbal lease was extended for another year, and likewise in 1941, 1942, 1943, 1944 and 1945; that the witness had two nephews, Mack Fox and Roger Fox, who were in military service in World War II and had returned home; that about the middle of May, 1946, he told defendant that he wanted the boys to have the land in question to farm. Defendant did not say much, but they walked several rods to defendant's home; that plaintiff sat in a truck while defendant went in the house a short time, and when he came out plaintiff said: "What are you going to do about it?" and that defendant said: "Let them have it"; that soon thereafter he told Mack and Roger Fox they could have the operation of the land in question; that on July 9, he had a further conversation with the defendant at plaintiff's home place in the field. The witness testified that defendant asked the boys if they were going to farm that land. "I told him they were preparing to start work the following morning and he said 'If you undertake to hold that land it is going to cost you something'"; that plaintiff had no further conversation with defendant about it; that defendant never asked his permission

to put in a crop of winter wheat on the land in the crop year of 1947; that written notice was served upon defendant in December terminating his tenancy March 1.

Mack Fox testified that he had a conversation with defendant in the field where the witness and his father were plowing. The witness testified:

"He asked us what we were going to do and we told him we were figuring on plowing the eighty acres of the plaintiff as soon as we got the field done we were working in. He said he figured we'd just better stay off it because he wasn't going to give it up. He said he hadn't really made his mind up and if he didn't make his mind up he would let us know and for me to see him if I didn't hear from him. I went to see him the next morning at his house and asked him if he had made his mind up. He said to just stay off the land because he wasn't going to give it up."

This testimony was corroborated by Walter Fox, the father of Mack Fox.

Defendant's demurrer to plaintiff's evidence was overruled and defendant testified that he began to farm the land in 1939 and had no written agreement at any time with plaintiff; that he went into possession under an oral agreement which made no provision for termination of the tenancy; that he harvested 1,699 bushels of wheat in 1947, two-thirds of which was in an elevator on storage.

"I had a conversation with plaintiff in the latter part of May 1946 in a field at my place regarding my farming of this eighty. Just plaintiff and myself were present. In substance, plaintiff said that those boys wanted that eighty to farm. I said that was all right but it was too late for me to give it up that year. Plaintiff remarked about the boys coming back from service and he thought they were due some consideration. Walking back toward the house he said that those boys want that eighty and I said I would put it out for the coming year and they could have it after that. I did not agree to give up the eighty in the summer of 1946. I had a conversation with plaintiff in the forepart of July, the 9th or 10th. I said I noticed Walter's car parked up on the eighty and wondered if he had told the boys to go ahead and farm the land. He said they would either put the land out that fall or he would. I said I thought we had an understanding whereby I was to put that land out the coming year and the boys were to have it the following year and that I still intended to put that crop out that fall. I stayed in possession of the eighty and had no further conversation with the plaintiff during the time I was preparing the ground or planting the crop. I understood from a conversation I had with Mr. Fox in May, 1946, that he wanted the land for the two boys and he never did tell me after that that the boys did not want the land."

There was no testimony of the custom which defendant pleaded. At the close of the evidence the plaintiff and the defendant each

moved for a directed verdict. The trial court held there were no issues of fact involved requiring the determination of a jury and the parties consented that judgment might be rendered by the court without a jury. The jury was discharged.

The court took the matter under advisement, the parties submitted briefs, and on January 26, 1948, the court rendered its decision. In this the court found that the only matter in controversy is the ownership of two-thirds interest in 1,699 bushels of wheat, then in storage, produced upon the land in question, which was harvested in 1947, the crop having been planted in the fall of 1946 by defendant, who furnished all of the labor, seed, fuel and machinery to prepare the ground for seeding and planting the crop; that throughout the tenancy the understanding was that plaintiff was to receive one-third of the wheat and the defendant two-thirds; that a notice to terminate the tenancy was served by plaintiff on defendant on December 20, 1946, for the termination of the tenancy on March 1, 1947; that plaintiff leased the real estate under an oral lease in the summer of 1939 and by the terms of the agreement it was to be planted to winter wheat, a crop planted in the fall, which matured the following summer; that defendant planted the real estate to winter wheat each year after 1939 and delivered to plaintiff one-third of each crop.

The court analyzed the legal relations of the parties as follows: In the summer of 1940 no renewal of the oral lease was made by the parties, but defendant, with the knowledge and consent of plaintiff, cultivated and planted the real estate to winter wheat in the fall of 1940. The defendant thereby became a tenant from year to year under G. S. 1935, 67-502. The date for the termination of the tenancy from year to year is March 1 under G. S. 1935, 67-506. The notice must be in writing and served thirty days before March 1, and a failure to give such notice thirty days before March 1 gives the tenant a lease for another year.

"The *plaintiff* in the fall of 1940, when he permitted the defendant, without a new lease, to plant the real estate to winter wheat knew *or should have known:* 1. That the defendant thereby became a tenant from year to year. 2. That under a tenancy from year to year the date for the termination of the lease would be changed from the summer to March 1 of each year. 3. That a failure to give 30 days written notice before March 1 would give the defendant a lease for the following year. 4. That the winter wheat, which the parties agreed to be planted on the real estate, each fall, would not mature before March 1 of the following year." (Emphasis supplied.)

From these propositions the court reasoned that if the notice to terminate had been given in time before March 1, 1941, the lease would have terminated on that date in the event of the failure of a wheat crop or no growing wheat on the premises, but if there was growing wheat on the premises on March 1 the defendant would have had the right and the legal duty to harvest the wheat in 1941, and that "The failure of the plaintiff to serve a written notice previous to March 1, 1946, gave the defendant a lease for another year"; that the oral conversations after March 1, 1946, could not change the situation unless by agreement between the parties. Upon this interpretation of the law the court rendered judgment for defendant.

We think this analysis of the legal rights between the parties is erroneous. The court's conclusion of what the "plaintiff" "knew or should have known" of the legal relations of the parties in 1940 should not be limited to the plaintiff, but was equally applicable to the defendant. If such knowledge is to be attributed to one of them it should be attributed to both. Neither had a monopoly respecting such knowledge. Perhaps the more accurate view of how the parties regarded the matter is that each of them regarded it as a wheat-crop lease extending approximately July in one year to about the same date the next. From what transpired in 1946 it seems clear that the plaintiff so understood it, and possibly the defendant did also. It is only by operation of law as set forth in our statute (G. S. 1935, 67-502) that the term of the lease was changed to one from year to year, terminable only on March 1 by a proper and timely notice. (G. S. 1935, 67-506.) Upon the view that both the parties were bound to know the law, then both of them knew that the lease had been converted into a lease from year to year and that the same could be effectively terminated on March 1 by giving due and timely notice. When plaintiff, in May, 1946, advised defendant that he desired to change tenants there had been nothing illegal in law or unjust in equity for the parties to treat the subsequent use of the land upon the basis of the first oral agreement, namely, a wheat-crop lease, and have it terminate in July of 1946. Defendant was unwilling to do that. Obviously defendant preferred to stand on our statute applying to the situation and regard it as a farm lease which could be terminated on March 1, 1947; but by doing so he was bound also by the provision of our statute that the lease could be terminated on March 1, 1947. Therefore, he planted when he

knew that he could not harvest. The trial court's view that if there was growing wheat on the land on March 1, 1947, the lease could not be terminated as of that date is inaccurate. It writes a provision in our statute which is not there—a thing the court had no authority to do.

In *Bank v. Jesch*, 99 Kan. 797, 163 Pac. 150, it was held:

"The common-law rule that a tenant is not entitled to a crop sown but not maturing before the expiration of his lease has not in this state been modified by any custom of which judicial notice will be taken." (Syl.)

This statement of the common-law rule is in harmony with the statement contained in 36 C. J. 104; 51 C. J. S. 1039, and in the annotation in 141 A. L. R. 1240. Each of these authorities cites our case of *Bank v. Jesch*, supra, and many other cases in support of the rule there stated. There is no contention here that the common-law rule is not correctly stated in *Bank v. Jesch*, supra; neither is it contended that there has been any modification of it since that decision was handed down. Our later cases are in accord. See *Brendle v. Hudson*, 146 Kan. 924, 73 P. 2d 1013; *Levi v. Levi*, 149 Kan. 234, 239, 86 P. 2d 473; and *Giess v. Weeden*, 165 Kan. 551, 196 P. 2d 207.

The trial court predicated its decision largely upon the view that between the parties here the tenancy had been changed from the wheat crop year to a tenancy from year to year, and that under such a tenancy the defendant not only had the right but it was his duty to sow wheat in the fall of 1946. The case of *Bank v. Jesch*, supra, is contrary to the trial court's reasoning. The second paragraph of the syllabus reads:

"Where a lease is drawn for two years or more a provision that the rent paid is to consist of stated shares of the crops raised, among which wheat is named, can not be regarded as implying a right on the part of the tenant to harvest a crop sown in the fall preceding the 1st of March on which his lease expires."

The decision is a clear statement of the rule that even if a tenant is under the duty, by the terms of his lease, to sow a crop which does not mature until after his lease expires, he is not by that fact alone entitled to harvest the crop. There must be some agreement, express or implied, to the effect that he may harvest the crop. Cases on that point are collected under authorities above cited. In this connection we take note again that defendant sowed wheat

in the fall of 1946 contrary to the wishes of plaintiff, who clearly did not regard it as defendant's duty to sow wheat that fall.

Counsel for defendant in their brief, under the doctrine of emblements or waygoing crops, cite the case of *Story v. Lang,* 87 Kan. 727, 125 Pac. 72. In that case real property had been sold under a contract and the vendee had leased the land for wheat. The vendee became in default of payments and the vendor sued to cancel the contract. The decree canceling the contract was not rendered until three days before the harvesting of the wheat was begun. It was held that the tenant was entitled to the tenant's share of the crop. The ripeness of the crop at the time of the decree was an element which entered into the decision. The facts clearly distinguish the case from the one before us. We find the case cited in only one subsequent Kansas decision (*Wensler v. Tilke,* 97 Kan. 567, 570, 155 Pac. 946), where it was held not applicable.

While there are many decisions dealing with various questions pertaining to the landlord and tenant relation neither counsel for plaintiff nor counsel for defendant cite any case exactly in point, and our own research discloses none. It is clear, however, that under the common-law rule and under the decision of this court in *Bank v. Jesch,* supra, which is still the law of this state, defendant was not entitled to recover.

The result is that the judgment of the trial court should be reversed with directions to render judgment for the plaintiff. It is so ordered.

ARN, J., not participating.