Bank v. Jesch.

No. 20,678.

THE BANK OF DENTON, *Appellee*, V. JOHN JESCH, *Appellant*.

### SYLLABUS BY THE COURT.

1. LEASE—*Title to Growing Crops at Expiration of Lease.* The common-law rule that a tenant is not entitled to a crop sown but not maturing before the expiration of his lease has not in this state been modified by any custom of which judicial notice will be taken.

2. SAME. . Where a lease is drawn for two years or more a provision that the rent paid is to consist of stated shares of the crops raised, among which wheat is named, can not be regarded as implying a right on the part of the tenant to harvest a crop sown in the fall preceding the 1st of March on which his lease expires.

3. LEASE—*Growing Crops at Expiration of Lease—Agreement Between Owner of Land and Tenant.* A decision that the owner of land is precluded from disputing the right of a tenant to a share of a crop sown but not mature at the time of the expiration of the lease, is supported by evidence that prior to harvesting the crop the landlord recognized such right and exacted a promise from one claiming under the tenant that he would pay the expenses of the harvest.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed February 10, 1917. Affirmed.

*P. Hayes,* of Atchison, for the appellant.

*S. M. Brewster,* of Troy, for the appellee.

The opinion of the court was delivered by

MASON, J.: John Jesch, the owner of a tract of farm land in Atchison county, rented it to G. H. Hutchison by a written lease for the term from March 1, 1910, to March 1, 1912, which was at some time not shown extended to March 1, 1913. In the fall of 1912 Hutchison sowed eighty acres to wheat, and on December 20 of that year he executed to the Bank of Denton a chattel mortgage on his interest in the crop, stated to be an undivided three-fifths. The crop was harvested by Jesch, the owner of the land. The bank sued him for the value of the tenant's share (less the expenses of harvesting) claimed by it under its mortgage, and recovered a judgment, from which he appeals.

The defendant maintains that as the lease contained no

provision to the contrary the tenant's interest in the property, including the crop, ceased absolutely on March 1, 1913. The plaintiff contends that the tenant was entitled to a share in the crop which he had sown, and that in any event the defendant is precluded by his conduct from asserting title to all of it.

1. The general law on the subject of the rights of the offgoing tenant with respect to the waygoing crop is thus stated:

"At common law, where land is leased for a number of years, and consequently the period of its determination is fixed, and the lease is silent as to who shall be entitled to the growing crops on the land at the end of the term, the outgoing tenant is not entitled to such crops. Where, however, the lease, expressly or by implication, recognizes the right of the tenant to sow in the last year of the term, the general rule is that he has a right to harvest the waygoing crop, where the lease is silent as to who is entitled thereto, and where there is an express agreement that ' the tenant shall have the waygoing crop he is of course entitled thereto. So in several jurisdictions, by general custom, the tenant is entitled to the waygoing crop, even where such right is not stipulated in the lease." (24 Cyc. 1069.)

In Delaware, New Jersey and Pennsylvania the commonlaw rule is held to have been modified by a general custom, of which the courts take notice, of permitting the tenant in some instances to harvest an annual crop sown before the expiration of his lease and maturing afterwards. (See cases cited in notes to the text quoted, and in Note, 9 Ann. Cas. 1139.) Elsewhere if such a custom exists it is given the same effect, but the party relying upon it is required to prove its existence as a part of his case. In the present instance no evidence was given of any local custom, and we can not say as a matter of law that the practice referred to obtains in this state.

2. If the lease, either expressly or by any fair implication to be drawn from its language in view of the surrounding circumstances, had indicated that it was the duty of the tenant to sow wheat each year, or even that the expectation of the parties was that he should do so, his right to harvest the crop might be readily inferred. But no showing was made of any special circumstances affecting the matter, and the contract contained nothing bearing upon the use to be made of the land beyond these provisions regarding the rent to be paid:

"Tenant to give landlord as rent, two-fifths of oats and wheat, and one-half of the corn, same to be delivered to the market free of charge; and two-fifths of all other crops."

Where a farm is leased for a single year, from March to March, the naming of wheat as one of the crops the tenant might grow, and the fixing of the portion of it to be applied on the rent, could perhaps be regarded as indicating that he was expected to sow wheat, and to sow it in the fall, since spring sowing is so rare, and therefore that he was to have the right to harvest it after the lease had expired. But here that inference is not warranted because the contract was drawn for two years. The mere reference to wheat as one of the crops that the tenant might raise did not imply that it was to be grown each year, for it is consistent with an expectation that he would sow wheat in 1910 but not in 1911. He would not be warranted in sowing wheat in the fall preceding the expiration of the lease, merely because otherwise a part of the tract would remain for a time unproductive, for the landlord's right to make such use of the land as he should see fit could only be restricted by his own consent, given expressly or by reasonable implication.

3. Evidence was introduced tending to show these facts, which the court must be deemed to have found: The tenant left the country before the maturity of the crop. In the forepart of June, 1913, the cashier of the bank met Jesch, the owner of the land, and made a demand on him for the wheat. Jesch asked him if he was the man that was interested in the wheat crop, and he said he was. Jesch then said they would get along all right, and that he would expect him to pay the expenses. The cashier said he would do so. The cashier testified:

"He said I should help him get hands to thresh. . . . He was willing that I should have my part, which was three-fifths, less expenses. There was absolutely no dispute as to my having my interest."

The plaintiff contends that by his conduct at this time the defendant was precluded from afterwards denying its claim. The defendant maintains that no estoppel could have resulted, because the plaintiff's position was in no way changed for the worse by reason of anything that had been said. In order for the conversation narrated to operate as a bar to a subsequent denial of the plaintiff's interest it is not necessary that there should have been a concurrence of all the elements of an estoppel, as the term is usually defined. "Whether the principle

is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important." (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099.) "The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced." (10 R. C. L. 694.) The courts properly look with favor upon a claim to a crop reasonably made by or under him who planted it. "If possible, the law allows the one who sows to reap." (*Smith v. Frantz*, 59 Ind. App. 260, 270.) Here the defendant not only acquiesced in the bank's assertion of an interest in the wheat, but also exacted an enforceable promise that it would pay the expenses. Upon this ground we sustain the decision of the trial court.

The judgment is affirmed.