No. 39,403

J. H. WOODMANCY, *Appellant,* v. ALVA L. BRADY, also known as A. L. BRADY; EMIL STOECKER; EMMETT ANDERSON; HERMAN J. STOECKER and LEO STOECKER, *Appellees.*

(271 P. 2d 288)

Opinion filed June 12, 1954.

*Jesse I. Linder,* of Sharon Springs, argued the cause and was on the briefs for the appellant.

*V. E. Danner,* of Ellsworth, argued the cause and *John V. O'Donnell,* of Ellsworth, was with him on the briefs for appellee Brady; *Corwin C. Spencer,* of Oakley, argued the cause and was on the briefs for appellees Emil Stoecker, Emmett Anderson, Herman J. Stoecker and Leo Stoecker.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages alleged to have been sustained when plaintiff was allegedly unlawfully dispossessed of agricultural land. The appeal is from an order of the trial court striking allegations from the petition.

The petition alleged on September 1, 1946, defendant Brady and wife leased two quarter sections of land to one John Young for a term of years commencing March 1, 1947, and ending on March 1, 1952, for a cash rental of $2,000 for the term, or $400 a year; that Young assigned the lease to the plaintiff, a copy of which was attached; that plaintiff had performed all the conditions of the lease up until March 1, 1952; that by the terms of the lease plaintiff was to break not less than 200 acres for farming purposes; that plaintiff did break 200 acres in 1947, and in 1948 planted wheat thereon, also in the years 1949, 1950, 1951 and 1952; that since the termination of the lease on March 1, 1952, plaintiff, subject to a notice to quit, became a holdover tenant, commencing on March 1, 1952, under the same terms as in the lease with the consent of defendant Brady, which consent was both express and implied up to about September 1, 1952; that plaintiff caused 50 acres of the land in question to be summer fallowed for planting of wheat for the years 1952 and 1953, and caused the wheat stubble on 172 acres to be prepared for the planting of wheat; that as the holdover tenant, with the right to plant the 172 acres, and the summer-fallowed 50 acres to wheat in the fall of 1952, and to harvest it in the summer of 1953, plaintiff paid Brady to be applied as cash rent for the year commencing March 1, 1952, $400; that on September 3, 1952, Brady entered into a contract with defendants Anderson and Stoecker, whereby Brady agreed to sell the land in question to them; that by a paragraph of the contract the parties agreed there was a tenant on the land and each party agreed to use his best efforts to obtain possession from him; that defendant Brady, together with co-defendants, about September 12, 1952, unlawfully took possession of all the real estate in question over the protests of plaintiff, depriving him of the use of his land and of his right to plant it to wheat and proceeded to plant wheat on it; that in planting this wheat the defendants used an

insufficient amount of seed wheat and planted it when the soil was too dry; and in an unfarmerlike manner; that defendant Brady after having deprived the plaintiff of the possession of the land on the 17th of November, 1952, sent him by mail a notice to terminate his tenancy on or before March 1, 1953; that the plaintiff as a holdover tenant, commencing on the 1st day of March, 1952, under the terms of the lease, and by reason of practice between plaintiff and Brady expended $400 cash for rent, $3 an acre for preparing the stubble-field of 172 acres for planting of wheat or $516 and the sum of $5 per acre, the actual cost of preparing the summer-fallowed land of 50 acres or $250, making a total cost expended by plaintiff of $1,166; that defendant Brady, together with the other defendants, with full knowledge of plaintiff's right to possession, took possession of land prepared by plaintiff for planting and converted all the benefits created by the plaintiff to their use; that the 172 acres of stubblefield prepared by plaintiff for planting was of the reasonable value to the plaintiff of $6 per acre, or a total of $1,032 and the 50 acres of summer-fallowed land was of the reasonable value to the plaintiff of $12 per acre or a total value of $600; that by reason of the things pleaded plaintiff had been damaged in the amount of $1,632, being the reasonable market value on the 12th of September, 1952, of the land prepared by him for planting, and defendant should be required to pay to plaintiff the sum of $1,632 actual damages, together with the amount of $500 as punitive damages. The prayer was for that amount.

The lease was attached. It was entered into on September 1, 1946, and provided that plaintiff should take possession on March 1, 1947, and that the tenancy should end on March 1, 1952; that the rent should be $2,000, $200 to be paid on March 1, 1947, and $200 on September 1, 1947, and the same amount to be paid on succeeding years; that the plaintiff should develop the land and break out not less than 200 acres for farming purposes and cultivate it in a farmerlike manner; that at the expiration of the lease the plaintiff should have first option to purchase the land upon due notice and should have the right to sell or remove any and all improvements placed on the land by him. The lease was assigned to the plaintiff.

To this petition Brady filed a motion to strike the language wherein plaintiff alleged his right to recover for work done on the land in the fall of 1952 in preparing it for wheat to be harvested

in 1953. The court ordered that the plaintiff should have time in which to amend his petition. Some time thereafter counsel for plaintiff in a letter of the trial judge requested the court to sustain these motions to strike so that plaintiff might appeal. Thereafter the court on October 8, 1953, did sustain them. The appeal is from that order. The assignments of error are that the court erred in sustaining the motions to strike.

The action arises from the fact that the lease was the usual farm lease and began on March 1st and ended on March 1st. Since this was wheat land it was inevitable that when the plaintiff's lease expired by its own terms on March 1, 1952, any wheat that he should plant before his tenancy ended could not be harvested by him without an agreement with his landlord express or implied. Such is what we held in *Fox v. Flick*, 166 Kan. 533, 203 P. 2d 186. There we said:

"The decision is a clear statement of the rule that even if a tenant is under the duty, by the terms of his lease, to sow a crop which does not mature until after his lease expires, he is not by that fact alone entitled to harvest the crop. There must be some agreement, express or implied, to the effect that he may harvest the crop."

Counsel for plaintiff realized the force of the above holding and attempted to avoid its effect by pleading that as a holdover tenant on the land "with the right to plant said cultivated 172 acres and said summer-fallowed 50 acres to wheat in the fall of the year 1952 and to harvest the same in the summer of 1953" he paid the rent for the year on March 1, 1952, to March 1, 1953. The language quoted above was part of that stricken and was actually the only allegation in the petition where he pleaded any rights to extend beyond March 1, 1953. This pleading, however, was actually nothing more than a legal conclusion. We must consider it in connection with the letter of defendant which the plaintiff attached to his petition and made a part thereof. In one of these letters written on March 16, 1951, defendant advised plaintiff he would grant him an additional year after March 1, 1952, only it would be subject to sale. The additional year would be a year after March 1, 1952, when his five-year lease ended. Plaintiff pleads throughout his petition that he was the holdover tenant under the same terms and conditions as the written lease.

The result is that the work performed by plaintiff in the fall of 1952 in preparing the ground for wheat planting was a voluntary act

on his part for which no one was bound to pay him. He really is in a better position than he who plants a crop which could not mature until after his lease would expire. He at least did not lose his seed. Giving plaintiff's pleading every presumption in favor of the pleader, he does not plead any facts from which it may be inferred that he had any rights that would extend beyond March 1, 1953. That would be about three months before any crop planted in the fall of 1952 would be ready to harvest.

This is not to say that defendants had any right to dispossess plaintiff on September 12, 1952. The allegation in which he alleged and claimed damages for that invasion of his rights is still in the petition. He, under the allegations in his petition, is entitled to whatever he can prove his damages were for loss of possession of the land from September 12, 1952, to March 1, 1953. The only allegations stricken were those in which he claimed damages on account of having prepared the land for the planting of a crop he could not hope to harvest since it would mature after his holdover year had ended. The above allegations were rightfully ordered stricken. Plaintiff alleged that defendant Brady did on November 17, 1952, give him notice to quit on March 1, 1953.

The judgment of the trial court is affirmed.

THIELE, J., concurs in the result.