No. 41,459

LaVerne Barton and Dorothy Barton, his wife, *Appellants*, v. Ray X. Welker and Mabel D. Welker, his wife, *Appellees*.

(341 P. 2d 1037)

Opinion filed July 10, 1959.

A. *Lewis Oswald* and *E. Dexter Galloway*, both of Hutchinson, argued the cause, and *William L. Mitchell*, of Hutchinson, was with them on the briefs for the appellants.

*Harry H. Dunn*, of Hutchinson, argued the cause, and *D. C. Martindell*, *W. D. P. Carey, J. Richards Hunter, Edwin B. Brabets, Robert C. Martindell, William B. Swearer* and *Elwin F. Cabbage*, all of Hutchinson, were with him on the briefs for appellees.

The opinion of the court was delivered by

PARKER, C. J.: This appeal stems from an order of the district court where it was adjudged that appellees were entitled to a fractional portion of a maize crop.

In the interest of clarity, appellees Welker will be sometimes referred to as the lessors and appellants Barton as the lessees.

The facts leading up to this appeal will be related as briefly as the state of the record permits.

On February 2, 1953, Ray X. Welker and Mabel D. Welker, as lessors, entered into a farm lease and purchase agreement with Laverne and Dorothy Barton, as lessees, for a term of five years. The leasing term was to begin on August 1, 1953, and end August 1, 1958. The lease, insofar as is pertinent to an accurate determination of this appeal, stated that the lessors owned, in addition to certain described farm lands and improvements thereon, machinery, the aggregate total value of which was $12,900.00. Among other things, the lessees agreed to purchase the machinery by paying twenty-five per cent or $3,223.00 upon execution of the contract contained in the leasing agreement and the balance was to be paid by certain crop shares anually with interest at six per cent. The stated amounts were to be apportioned during the five-year period according to the terms of the lease. The lessees entered into possession and during their occupancy made payments towards the purchase of the machinery.

Later, toward the end of the five-year term and on April 29, 1958, an agreement was signed by the parties to this lawsuit. It appears that at the time this agreement was signed, an amount of money was still due and owing on the machinery. This instrument in part reads:

". . . that Lessees may plant maize on said land to mature after August 1, 1958, and that Lessees will give possession of said land on August 1, 1958, except for the right to harvest said maize. That Lessees will harvest said maize at their own expense and that the proceeds will be divided as follows: Two-fifths (2/5th) to Lessees minus any cash rent which is owing on August 1, 1958;

two-fifths (2/5th) to Lessors, and the other one-fifth (1/5th) shall be applied to payment of amounts owing Lessors on machinery purchase contract unless Lessees shall sooner pay said contract in full, which contract is payable August 1, 1958. If Lessees have paid said machinery contract by August 1, 1958, they shall be entitled to said one-fifth of said maize.

"This agreement shall not vary the terms or rights of the parties in the machinery purchase contract."

A few days prior to the expiration of the five-year term, the lessees returned the farm machinery to the lessors. At this time in the sequence of events, apparently the parties to the lease made some effort to negotiate their financial arrangements under the lease. This is evidenced by a letter dated July 28, 1958, which was written by counsel for appellants (lessees) and addressed to Ray X. Welker, one of the lessors, which in substance purported to convey a check "in the sum of $536.91 as full and complete settlement." Four other items, not included in the above amount, were mentioned separately. The letter further stated that the lease was now terminated and appellee (lessor) had absolute possession of the farm and the machinery.

The present controversy arose when an action was filed by the Bartons to restrain the Welkers from harvesting the maize crop and on October 7, 1958, a temporary restraining order was issued.

By the terms of a journal entry dated October 11, 1958, the district court, by agreement of the parties, agreed to assume jurisdiction of the question concerning ownership of the maize crop and found in part as follows:

"THE COURT FINDS that the Farm Lease and Purchase agreement made and dated the 2nd day of February, 1953, was duly and legally entered into by and between the parties thereto and was and is a valid document, binding on the parties litigant; that Agreement made and dated the 29th day of April, 1958, was and is a valid document, binding on the parties litigant; that on Saturday, July 26th, 1958, the parties litigant made a full and complete settlement pursuant to said Farm Lease and Purchase Agreement, the terms of which were fully set forth in Mr. Oswald's letter *of* Mr. Welker under date of the 28th day of July, 1958; and that said letter did not modify nor set aside the Agreement made by and between the parties litigant on the 29th day of April, 1958, nor did the Defendants consider that said letter modified or set aside said Agreement."

Remaining portions of the journal entry pertinent to the appeal show that the court found that appellants (lessees) were entitled to harvest the crop of maize pursuant to the agreement dated April 29, 1958; that the crop was to be stored until further order of the court; that the temporary restraining order was made permanent;

and that the question of the proportionate shares of said crop of maize owned by the parties should be and was reserved for further consideration.

By a journal entry dated November 21, 1958, the district court ordered that each party take two-fifths share of the stored maize crop and that the other one-fifth, over which there was disputed ownership, remain in storage until the court determined to whom it belonged.

The trial court rendered its decision with respect to the question reserved on December 11, 1958, in the form of a Memorandum Opinion which sets forth the decisive facts, outlines the issue, and states the reasons for its decision with such clarity we believe it should be quoted at length. It reads:

"It seems to me that the contract of April 29, 1958, evidences an intent on the part of all parties thereto that the defendants should receive the final 1/5th part of the maize unless they had received, by August 1st, the entire purchase price of the machinery in the manner provided in the contract of February 2, 1953, and, conversely, that the plaintiffs should be entitled to no part of such maize unless by August 1st they had paid said entire purchase price, according to the terms of the 1953 contract. The defendants' agreement to apply this share of the maize to the payment of amounts due on the machinery was obviously designed to induce the purchasers to fulfill their purchase contract, and did not, in my opinion, militate against the defendants' right to receive and retain the same merely because the plaintiffs turn back the machinery and decline to complete payment of the purchase price thereof.

"It would do violence to my concept of 'payment' to designate as such the settlement which the parties made of their disputes. Rather than being held for the payment of the price of the machinery, the plaintiffs were released therefrom. Nowhere in the 1953 agreement do I discern any provision relieving the plaintiffs from the obligation to pay in money the full purchase price of the farm machinery, despite the fact that defendants became entitled to possession under certain conditions. When the parties made their settlement, the plaintiffs were not enforcing any contractual right to turn back the machinery in payment of the balance due, and, in my judgment, their delivery of the machinery did not constitute payment. The compromise of their differences by the parties, through which the defendants took back the machinery and in turn forgave the balance due them, did not affect the defendants' right to retain the fruits of their April agreement.

"It appears just to me that defendants bear the costs of this lawsuit. Their action initially gave rise to this litigation, even though it was later broadened by agreement to include the question discussed in the Memorandum. Accordingly, judgment will be entered awarding to defendants the 1/5th part of the maize which has been in dispute and assessing the costs against defendants."

Judgment was duly entered in accord with the foregoing opinion. Thereupon the Bartons filed a motion for a new trial, based on the

single ground the ruling of the trial court in holding the Welkers were entitled to the one-fifth of the 1958 crop of maize, as set forth in the Memorandum Opinion, was erroneous. When this motion was overruled they perfected the instant appeal where, in their brief, they concede the one and only question involved on appellate review is whether the Bartons (appellants) or the Welkers (appellees) are entitled to the disputed one-fifth of the maize crop.

Pointing to the fact that in its decision of October 11, 1958, disposing of the injunctive feature of the case, the trial court found that on July 26, 1958, the parties entered into a full and complete settlement pursuant to the farm lease and purchase agreement, appellants, as we understand them, contend that all matters in controversy between the parties were disposed of by the July 28, 1958, letter and the subsequent acceptance and cashing of the cashier's check therein enclosed. Assuming, *arguendo*, that finding is to be construed as holding all matters involved under the contract of February 2, 1953, had been settled, we cannot agree it disposed of all matters in controversy between the parties. The trouble with this contention of appellants is that in connection with the same finding the court expressly held, under another finding which is equally binding upon the parties, that they did not intend to change or alter their rights under the subsequent contract of April 29, 1958. In other words the court found there had been a settlement of one contract but not the other. Since neither party has seen fit to abstract the evidence adduced in support of either finding, we must assume there was evidence to support both findings (See West's Kansas Digest, Appeal & Error, § 907 [2]; Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, §§ 419, 421; and the numerous decisions there cited). We must also proceed on the premise such findings were within the province of the trial court.

Under our decisions, an accord and satisfaction is the result of an agreement between the parties, and, like all other agreements, it must be consummated by a meeting of the minds of the parties, accompanied by a sufficient consideration. And if a creditor is to be held to abate his claim against a debtor, it must be shown that he understood that he was doing so when he received the claimed consideration therefor. (*Harrison v. Henderson*, 67 Kan. 194, 200, 72 Pac. 875; *Matheney v. El Dorado*, 82 Kan. 720, 109 Pac. 166; *Sigler v. Sigler*, 98 Kan. 524, 532, 158 Pac. 864; *Manning v. Woods, Inc.*, 182 Kan. 640, 643, 324 P. 2d 136.) Moreover, in *Vigneron v.*

*List & Hallett Construction Co.,* 130 Kan. 676, 288 Pac. 570, we held that where—as here—it appears an issue of fact exists as to what the payment and the accord and satisfaction actually covered, that question is to be determined by the trier of fact on the basis of whether there has been a meeting of the minds of the parties and the unity of purpose and intention as to the extent of the settlement.

Applying the rule of the foregoing decisions we have no hesitancy in concluding the trial court properly concluded (as set forth in the journal entry of October 11, 1958) that the letter of July 28, 1958, did not modify or set aside the agreement made between the parties on April 29, 1958. Indeed proof of the fact such letter and acceptance of the check did not consummate an accord and satisfaction of the last mentioned contract with the understanding and unity of purpose required under our decisions, is to be found in the letter itself. Resort thereto discloses two contradictory statements. One was to the effect the check therein included, which it cannot be denied was for much less than the amount then due for the purchase price of the machinery, was offered, along with the return of such machinery, as full and complete settlement. The other reads "The Lease is now terminated. You have absolute possession of the farm and the machinery." Obviously both statements could not be true for to give full force and effect to the one last mentioned would mean, which neither party now contends, that appellants would have no right whatsoever in and to any part or portion of the maize crop planted pursuant to the terms and conditions of the separate and distinct contract of April 29, 1958. It follows many contentions advanced by appellants to the effect all rights under such contract, as between the parties, have been settled and disposed of by reason of the claimed accord and satisfaction lack merit and cannot be upheld.

From what has been heretofore stated it becomes obvious that, under the limited issue (who is entitled to the disputed one-fifth of the maize crop?) involved on this appeal, our obligation is to construe the additional and separate agreement entered into between the parties on April 29, 1958, on the basis of their intention at the time of its execution. Therefore we turn to such issue mindful as we do so that where—as here—the terms and provisions of a contract are ambiguous, obscure or susceptible of more than one meaning such terms and provisions must be considered in the light

of the universal rule (see *Heckard v. Park,* 164 Kan. 216, 188 P. 2d 926; *Tate v. Stanolind Oil & Gas Co.,* 172 Kan. 351, 240 P. 2d 465) that where ambiguity or uncertainty is involved the intention of the parties is not ascertained by punctuation alone or by resort to literal interpretation of an isolated provision but by consideration of the instrument as a whole, circumstances existing when the agreement was made, the object sought to be attained, and other conditions tending to clarify the real purpose and intent of the parties.

Appellants strenuously urge that, having settled their obligation under the machinery purchase contract by return of the machinery and payment of the amount heretofore mentioned, they are to be considered as having "Paid" such contract by August 1, 1958, within the meaning of the term "Paid" as it appears in the contract of April 29, 1958, and hence are entitled to the disputed share of the maize crop. We believe this construction of the last mentioned agreement not only overlooks but entirely disregards preceding language of the same instrument providing that the other one-fifth of the maize crop should be applied to payment of amounts owing lessors (appellees) on the machinery purchase agreement unless lessees (appellants) *should sooner pay said contract in full* by August 1, 1958. To concede, as appellants contend and we repeat for purposes of emphasis as the trial court found, the parties litigant made a full and complete settlement pursuant to the Farm Lease and Purchase Agreement does not mean that appellants paid that contract in full as required by the terms of their subsequent agreement. Indeed, the undisputable facts of record are that they did not do so.

Under the foregoing circumstances, standing alone, we believe there is sound ground for the trial court's conclusion that the contract of April 29, 1958, evidences an intent on the part of all parties thereto that the defendants (appellees) should receive the final one-fifth part of the maize unless they had received, by August 1st, the entire purchase price of the machinery in the manner provided in the contract of February 1953, and, conversely, that the plaintiffs (appellants) should be entitled to no part of such maize unless by August 1, 1958, they had paid the entire purchase price, according to the terms of the 1953 contract. Even so it is not required that we base our decision entirely upon that premise. It suffices to say we have reviewed the entire record in the light of the rule to which we have previously referred and, after doing so,

are convinced the facts, conditions and circumstances there presented disclose the trial court's construction of the April 29, 1958, contract, as set forth in the first two paragraphs of its heretofore quoted Memorandum Opinion, was proper and that its subsequent judgment, rendered in accord with the views expressed in such opinion, must be upheld. Therefore the judgment must be and is affirmed.

It is so ordered.