No. 45,471

Math Kohn, *Appellant* and *Cross-Appellee,* v. Helen Babb, *Appellee* and *Cross-Appellant.*

(461 P. 2d 775)

Opinion filed December 6, 1969.

*Don W. Noah,* of Beloit, argued the cause and was on the brief for appellant.

*Tweed W. Ross,* of Beloit, argued the cause and *Harry W. Gantenbein,* of Beloit, was with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: The present appeal grows out of an action brought by a farm tenant, Math Kohn, to obtain an accounting and other relief from his landlord, Helen Babb. The trial court found there was $409.77 due the tenant on the accounting and denied further relief. Both parties have appealed.

The controversy arose from a written farm lease entered into by these parties covering 1600 acres of land and a line of farm machinery owned by the landlord. The land was suitable for wheat, barley, milo and other dry land crops. The farm lease commenced on March 1, 1961, ran for one year and continued for such successive terms of one year each as could be agreed upon by the parties. The tenant agreed to furnish all labor to plant, cultivate and harvest the crops on the farm and devote full time to the farming activities. The landlord agreed to advance all operating expenses of the farming operation. Labor was not deemed an operating expense. The landlord was to keep and maintain records covering the farming activities. One-third of crops was reserved to the landlord as rental for the land. The operating expenses were to be deducted from the remaining two-thirds of crops, to reimburse the landlord for expenses paid. The balance was to be divided equally between the landlord and tenant as their profits from the lease. The tenant agreed to obtain permission from the landlord before making major repairs to the machinery. The lease provided for an annual reconciliation of accounts on the operation on or before November 15 of each year.

The tenant cultivated, planted and harvested the spring crops in 1961. In the fall of 1961 he planted land to wheat. The wheat was harvested in 1962. He cultivated land in preparation for seeding wheat in the fall of 1962.

On September 7, 1962, the parties met in the home of the landlord for the purpose of reconciling and settling the annual account on the farming operation. Items of income and expense had been listed in advance by the landlord on an account sheet. This account sheet was introduced at the trial as Exhibit E. After all items appearing on the sheet had been considered certain corrections or adjustments were made and the tenant received checks for $743.71, $268.00 and $66.00. The account covered the period from March 1, 1961, to September 7, 1962. The tenant was dis-

appointed and dissatisfied with his share of profits. There was disagreement over the government farm payments. The tenant testified the landlord told him to take the figures home, figure them over and if they weren't satisfactory she would make them satisfactory.

They parted and the tenant cashed the checks. Thereafter the tenant called the landlord and told her he was not going to continue to work the lease. He did no more farm work. He did not plant wheat on the ground cultivated in 1962.

The tenant made two separate claims in the action which followed. The first claim was for an accounting. The second claim was for recovery of money for his time and services in getting the machinery and land ready to plant crop in the fall of 1962 for harvest in 1963. The second claim was based upon a theory of restitution for the unjust enrichment received by the landlord from the 1963 wheat crop. The claim for accounting was tried to the court and a judgment for $409.77 was rendered in the tenant's favor. A summary judgment was entered on the second claim in favor of the landlord for the reason that no claim was stated upon which relief might be granted. The court held the services for which the claim was made were required under the written lease which limited payment to a share of the crops.

Both parties appeal from the judgment entered on the accounting claim. The tenant appeals from the summary judgment in favor of defendant entered on the second claim.

We will first examine the points advanced by the tenant.

During the trial on the accounting the tenant testified there was wheat and barley left in farm bins when he quit. He insists this grain was not taken into consideration in the accounting and that he should be entitled to $672.27, the value of his one-third share of the grain.

Exhibit E, which was the account listing the crop income and expenses for the period covered, is not reproduced in the record. There is nothing in the memorandum opinion of the court which indicates it did not consider the grain on hand as income. The tenant testified that any grain on the farm that was to be fed to cattle was first taken to town, weighed and accounted for to the landlord. Item V of the written lease provided:

"Lessee further agrees he will deliver to elevators, bins or other terminal points as may be designated by the lessor all grain crops harvested from said real estate, and that all of said grain crops will be delivered, sold, stored, or otherwise handled in the sole name of lessor."

We have examined the tenant's motion for new trial and his motion for amendment and additional findings and find no contention that grain stored in bins was omitted in the accounting. Under the state of the record presented to this court we are unable to determine whether this grain was overlooked or included by the trial court. It may have been included in Exhibit E which is not made a part of the record. On appellate review error in the court below is never presumed. The burden is cast upon the appellant to affirmatively establish that error has been committed. (See Hatcher's Kansas Digest, Revised Edition, Appeal and Error, § 408.) Questions relating to a review of evidence cannot be answered on appeal when it is apparent pertinent evidence before the trial court is omitted from the record on appeal. (*Jocich v. Greyhound Cab Co.*, 188 Kan. 268, 362 P. 2d 27.)

On the next point the tenant claims expenses incurred in overhauling and rebuilding machinery were wrongfully included in farm operating expenses. He contends such expenses were the responsibilty of the defendant-landlord. Included in these were truck tires placed on one of the three trucks which were used in the farming operation. Some of the larger items complained of were parts and labor totalling $68.80 paid to Moritz Implement Company and a repair or overhaul job for $150.97 paid to Meis Hardware and Implement Company.

The lease provides:

"VI. Lessor agrees to furnish and pay for all of the operating expense of said farming operation, including both the real estate and machinery used thereon, which shall include, but not be limited to, all fertilizer, machinery, repairs, seed, gas, oil, grease and all other goods and supplies required in the farming operation of such real estate.

"VII. And, lessee agrees the lessor shall keep and maintain all records regarding said farming activities; that he will furnish and deliver to her, at least once each month, all bills, receipts, statements, and other evidence required to reflect in detail all income and expense of such farming operation.

. . . . . . . . . . . . .

"XIII. And, lessee agrees that if any major repairs are required on any machinery, either his or that belonging to the lessor, he will first confer with lessor in regard to such and will proceed only with her agreement before the same may be considered as part of the expense of the farming operation."

The tenant arranged for the repairs to machinery and there is nothing in the evidence or in the lease which supports the tenant's contention that expenses of overhauling and rebuilding of machinery were to be separately paid for by the landlord. Paragraph XIII of

the lease provides for special treatment of "major repairs". They were to be agreed upon in advance and considered a part of the expense of the farming operation. Major repairs are commonly understood to be expenses of overhauling machinery.

The trial court after hearing the evidence made a specific finding "that such expenditures are not capital expenditures and are properly charged as items of expense". This finding is supported by the evidence and cannot be overturned on appeal.

The tenant contends expense of repairs and grass seed was incurred in 1962 in connection with government programs and in preparing ground for the 1963 crop. He argues these items should not have been included in the accounting or charged against crop income for 1961 and 1962.

The grass seed was used to comply with requirements under certain government programs. The trial court held payments earned under government programs should be considered as crop income. It would necessarily follow that any expense incurred in connection therewith should be considered as farm operating expense. Government program payments earned in 1961 of $1229.53 were considered by the trial court in arriving at judgment for the tenant in the sum of $409.77. In addition the tenant testified he received his share of government farm payments earned for 1962 in the sum of $1112.70.

Liability for the expense of preparing ground for crops which cannot be harvested during the term of a lease is a matter generally agreed upon by the parties. It was apparent when this lease was signed that it would be terminated each successive March 1 unless renewed. It was also apparent that the tenant was obligated by the lease to cultivate the land in a proper manner. Both parties contemplated raising wheat on the land. The wheat was to be planted in the fall and harvested the following year. No provision was made in the lease for labor or operating expenses other than those we have mentioned. The parties knew or should have known there would be a time in the future when the lease would not be renewed. No provision was made to cover this foreseeable event. Under this lease the farm operating expenses incurred prior to the accounting date were to be deducted from crop income irrespective of the crop year in which the expenses were incurred.

In *Williams v. Safeway Stores, Inc.,* 198 Kan. 331, 424 P. 2d 541, we stated at page 344:

"The intention of the parties and the meaning of a contract are to be deduced from the instrument when its terms are plain and unambiguous; when the language is clear and unequivocal the meaning must be determined by its contents alone. Words cannot be read into a contract which import an intent wholly unexpressed when it was drawn and executed. The court may not make an agreement for the parties which they did not make themselves."

(See also *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799, and *Mays v. Middle Iowa Realty Corp.*, 202 Kan. 712, 452 P. 2d 279.)

Generally a tenant renting on a crop-share basis is not entitled to a crop sown but not maturing before the expiration of his lease. (*Bank v. Jesch*, 99 Kan. 797, 163 Pac. 150.) It has been held a tenant is not entitled to recover money expended by him in preparing the land for planting a crop he could not hope to harvest because it would not mature until after his lease expired. (*Woodmancy v. Brady*, 176 Kan. 522, 271 P. 2d 288.)

In *Fox v. Flick*, 166 Kan. 533, 203 P. 2d 186, it was stated at page 540:

"The decision [referring to *Bank v. Jesch*, supra,] is a clear statement of the rule that even if a tenant is under the duty, by the terms of his lease, to sow a crop which does not mature until after his lease expires, he is not by that fact alone entitled to harvest the crop. There must be some agreement, express or implied, to the effect that he may harvest the crop. . . ."

Under certain circumstances when the crop is planted by a tenant an agreement to harvest may be implied from the conduct of the parties. Acquiescence by the landlord may give rise to equitable estoppel and entitle the tenant to the waygoing crop. (*Bank v. Jesch*, supra.) Such was not the case here.

In *Rogers v. Ostmeyer*, 180 Kan. 265, 302 P. 2d 999, it was held a tenant who voluntarily moved from the farm and terminated his lease with the assent of the landlord was not entitled to return and harvest a crop of alfalfa.

In *Weltmer v. Mathis*, 186 Kan. 327, 349 P. 2d 877, it was said:

". . . It is true that plaintiffs had given notice that they would not occupy the farm for the next year, and so would not receive benefit from the crops raised thereon, but the contract was still in force under which they had entered, and it would seem they had agreed to perform such work without extra pay. Therefore, we do not believe that it has been made to appear that the court erred in denying plaintiffs extra compensation for this work." (p. 332.)

The trial court found the omission of the 1961 government payments from the accounting was in good faith.

The mere failure of one party to comply with the terms of a con-

tract is not grounds for rescission. The remedy is an action for an accounting. Failure of consideration is not ground for rescission of a contract unless so great as to amount to fraud. (*Baron v. Lyman*, 136 Kan. 842, 18 P. 2d 137.)

In the case of *In re Estate of Johnson*, 202 Kan. 684, 452 P. 2d 286, the rule was stated thus:

"To warrant rescission of a contract because of a breach of its terms, the breach must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement; a breach which goes to only a part of the consideration, which is incidental and subordinate to the main purpose of the contract, does not warrant a rescission." (Syl. ¶ 3.)

The failure of a landlord to include certain farm payments as income in an accounting is not so material as to defeat the object of the parties in making the agreement. Such a breach goes only to a part of the consideration, which is incidental and subordinate to the main purpose of the contract, and does not warrant a rescission.

The tenant's final contention is directed toward entry of the summary judgment in favor of defendant on the tenant's claim for restitution based upon unjust enrichment.

Restitution because of unjust enrichment may arise in equity upon rescission of a contract for fraud or similar cause. (*Holloway v. Water Co.*, 100 Kan. 414, 167 Pac. 265.)

Under the tenant's second claim he seeks to recover both expenses and labor incurred while carrying out a part of the written lease. These expenses and labor were furnished in preparing the ground for the 1963 crop which he did not plant or harvest. As previously pointed out his decision to abandon the lease was voluntary and without justification. Cases previously cited herein establish he cannot recover under these circumstances. (*Bank v. Jesch*, supra; *Woodmancy v. Brady*, supra; *Weltmer v. Mathis*, supra.)

One further case deserves mention on this point. In *Fritts v. Quinton*, 118 Kan. 111, 233 Pac. 1036, the plaintiff after part performance of a contract to raise pigs abandoned the contract and sued to recover compensation for his services upon *quantum meruit*. It was held compensation for both parties was to come from a successful prosecution of the business. Both were to be paid a share of the proceeds from the sales of pigs raised. This being the agreement, there was no legal foundation for the plaintiff's claim based on *quantum meruit*. The contract itself governed and limited his rights to a share of the pigs raised during his period of service.

When a tenant under a lease is paid for his services from a share of the crops raised on the land, and after cultivating certain land in preparation to seeding he abandons the lease, he cannot recover for expenses and labor in preparing the ground for a crop he did not plant or harvest.

Plaintiff's claim for restitution showed on its face these services and expenses were under a written lease. There was no provision in the lease for payment of such services except from crops raised. The services were rendered in connection with a crop he neither planted nor harvested. The claim failed to state facts sufficient to constitute a claim for relief and summary judgment in favor of defendant was proper.

The final matter to be considered arises on the cross-appeal by the landlord. She seeks to set aside the judgment for $409.77 on the accounting claim.

In support of this cross-appeal she claims the receipt and cashing of the checks tendered on September 7, 1962, constitute an accord and satisfaction.

The nature of an accord and satisfaction is explained in *Harrison v. Henderson,* 67 Kan. 194, 72 Pac. 875 as follows:

"An accord and satisfaction is the adjustment of a disagreement as to what is due from one party to another and the payment of the agreed amount." (Syl. ¶ 1)

"The mere payment by a debtor of a amount denominated a 'balance' upon an account rendered and its retention by the creditor do not constitute an accord and satisfaction." (Syl. ¶ 2)

"To constitute such payment an accord and satisfaction, it must be offered as full satisfaction of a claim, and accompanied by such declarations, or under such circumstances, as would amount to a condition that, if accepted by the creditor, it would be in full satisfaction of the debt." (Syl. ¶ 3)

(See also *Barton v. Welker,* 185 Kan. 294, 298, 341 P. 2d 1037.)

In *Barnes v. Mid-Continent Casualty Co.,* 192 Kan. 401, 388 P. 2d 642, it was held:

"To constitute an 'accord and satisfaction,' the agreement that a smaller sum shall be accepted in discharge of a larger one originally claimed must have been entered into by the parties understandingly and with unity of purpose." (Syl. ¶ 1)

(See also *Manning v. Woods,* 187 Kan. 418, 357 P. 2d 757 and *Mitchell v. Certified Finance, Inc.,* 183 Kan. 787, 332 P. 2d 516.)

In order for a payment to finalize an accord and satisfaction it must be offered as full satisfaction of a claim, and be accompanied

by such declarations, or under such circumstances as would amount to a condition that, if accepted, it would be in full satisfaction of the claim.

In our present case the checks were issued in an accounting between the parties after corrections and additional payments to the tenant. This tenant had previously received payments from the crops and the government. After the accounting figures were examined on September 7, 1962, the landlord gave the checks to the tenant. There was undisputed testimony by the tenant that the landlord told him to take the figures home, figure them over and if the checks were not satisfactory she would make them satisfactory. Under these circumstances the checks were not offered as full satisfaction of a disputed amount and they would not finalize an accord and satisfaction when cashed.

The trial court correctly found the essential elements necessary to constitute an accord and satisfaction were lacking. We agree with the trial court.

The judgment is affirmed.