No. 48,729

HUEY P. GREY and ANN GREY, *Appellants,* v. FREDDIE SCHMIDT and
PEGGY SCHMIDT, *Appellees.*

(581 P.2d 1180)

Opinion filed July 21, 1978.

*Christopher Randall,* of Turner, Hensley, and Boisseau, of Wichita, argued the cause and *Frederick K. Starrett,* of the same firm, of Great Bend, was on the brief for the appellants.

*Harold S. Herd,* of Coldwater, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal from a declaratory judgment determining the rights of the parties in a farm lease.

In 1950 defendants-appellees Schmidt (hereinafter referred to as "tenants") leased farm property from John Monroe. On May 20, 1976, the plaintiffs-appellants Grey (hereinafter referred to as "landlords") purchased the real estate from Monroe. Wheat, a fall seeded grain crop, was growing on a portion of the land. On June 30, 1976, the tenants received a notice to terminate the tenancy from the landlords. The notice was as follows:

"NOTICE OF TERMINATION OF FARM TENANCY
FROM YEAR TO YEAR

"TO FREDDIE SCHMIDT and PEGGY SCHMIDT, ROUTE 1, GREENSBURG, KANSAS:

"You and each of you should take notice that your farm tenancy, from year to year of real estate situated in the County of _____ State of Kansas, to-wit:

The Southeast Quarter (SE/4) of Section Eighteen (18), Township Twenty-nine (29) South, Range Eighteen (18), West of the Sixth Principal Meridian, Kiowa County, Kansas;

is terminated as of March 1, 1977. However, as to that part of the above-described premises which has been planted to a fall season grain crop on cropland which has been prepared in conformance with normal practices in the area, the termination date as to that portion of the described premises shall take place on or before August 1, 1976.

"Under no circumstances and under no conditions are you to work and seed any portion of the described premises which crops therefrom would mature after March 1, 1977.

"You and each of you are further notified that unless you quit, leave, vacate and surrender your possession of said premises on or before March 1, 1977 and in accordance with this notice, action will be commenced in the proper court to eject you.

"Dated at Pratt, Kansas this 28th day of June, 1976."

The last day of harvest was July 6, 1976.

The landlords concede that the termination notice as to August 1, 1976, was improper, but contend the entire tenancy terminated March 1, 1977. The tenants contend their tenancy runs to the day after the harvest in 1977 or August 1, 1977, whichever is first. The trial court held in favor of the tenants on August 20, 1976, and the landlords appeal. The 1977 crop had not been planted at the time of the trial court's determination and the 1976 crop had been harvested. Accordingly, no fall seeded grain crop was in the ground at the time of trial.

K.S.A. 58-2505, in the form in effect at the time, provides:

"All tenancies from year to year may be terminated by at least thirty days' notice in writing, given to the tenant prior to the expiration of the year."

K.S.A. 58-2506, in the form in effect at the time, provides:

"In cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March: *Provided, however,* That as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, the notice must fix the termination date of the tenancy to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first: *And provided further,* That if such tenant becomes a tenant from year to year by occupying the premises after the expiration of the term fixed in a written lease, the notice of termination of tenancy must fix the termination of tenancy to take place on the same day of the same month following the service of the notice as the day and month of termination fixed in the original lease under which said tenant first occupied the premises."

K.S.A. 58-2505 and 58-2506 were subsequently amended by 1978 Kan. Sess. Laws, Chap. 215, §§ 1 & 2, to provide as follows:

"Section 1. K.S.A. 58-2505 is hereby amended to read as follows: 58-2505. All tenancies from year to year, other than farm tenancies from year to year, may be terminated by at least thirty days' notice in writing, given to the tenant prior to the expiration of the year.

"Section 2. K.S.A. 58-2506 is hereby amended to read as follows: 58-2506. (a) Except as may be otherwise provided by this section or by a written lease signed by the parties thereto, in cases of tenants occupying and cultivating farms the notice to terminate such a farm tenancy must be given in writing at least thirty (30) days prior to the first day of March and must fix the termination of the tenancy to take place on the first day of March.

"(b) When a notice of termination is given pursuant to subsection (a) after a fall seeded grain crop has been planted, as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, the notice shall be construed as fixing the termination of tenancy of such portion to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first.

"(c) Subject to the provisions of subsection (b), a farm tenant becomes a tenant from year to year by occupying the premises after the expiration of the term fixed in a written lease, in which case the notice of termination of tenancy must fix the termination of tenancy to take place on the same day of the same month following the service of the notice as the day and month of termination fixed in the original lease under which said tenant first occupied the premises. Such notice shall be written and given to the tenant at least thirty (30) days prior to such termination date."

The tenants contend that the land was planted in a fall seeded grain crop at the time the notice was received; that "is planted" means customarily planted; that the notice was received less than thirty days before the last day of harvest; and that the tenancy could not, therefore, terminate prior to the day after the 1977 harvest. The landlords contend that the intent of the statute, as to fall seeded grain crops, was that the March 1 termination date for such crops was not feasible and that a tenant should not lose such growing crops. Therefore, a later termination was fixed. The landlords contend that "is planted" means crops then in the ground, not crops to be planted at a future date. The subsequent amendment to K.S.A. 58-2506 is viewed as clarification of the statute rather than a change.

On June 30, 1976, when the notice was received, the tenants had a wheat crop planted. The last day of harvest of this crop was July 6, 1976. Some of the other land was in summer fallow, which was to have been planted in wheat in the fall. So, the answer to the question, is a fall seeded grain crop planted, would have been

affirmative if asked on June 30, 1976, but negative if asked on July 15, 1976 (after the harvest). Tenants did not have greater rights as to tenancy on June 30, 1976, than they did two weeks later. Words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute (*Rogers v. Shanahan,* 221 Kan. 221, 224, 565 P.2d 1384 [1976]; *Roda v. Williams,* 195 Kan. 507, 511, 407 P.2d 471 [1965]). In K.S.A. 58-2506 (in effect in 1976) "is planted" means presently planted. We view the 1978 amendment of the language to "after a fall seeded grain crop has been planted" as a clarification rather than a change in its effect.

After the 1976 wheat crop was harvested, there was no land presently planted in a fall seeded grain crop. Therefore, the effective termination date for the entire tract was March 1, 1977. The tenants, after receiving the termination notice, proceeded to prepare and plant another wheat crop. They did so at their own risk. Indeed, the notice expressly prohibited such endeavor.

We hold that the trial court erred in determining that the notice given tenants was ineffective to terminate the tenancy on March 1, 1977, as the tenancy was terminated as of March 1, 1977.

The judgment of the trial court is reversed and judgment is entered for the landlords terminating the tenancy as of March 1, 1977.

SCHROEDER, C.J., dissenting: The provisions of K.S.A. 58-2505 and K.S.A. 58-2506 in my opinion are clear and unambiguous, and I refuse to attribute stupidity to the legislature in the construction of these statutes.

The court, in effect, in construing the foregoing statutes says that all oral farm tenancy leases in the State of Kansas are annual leases from March 1 to March 1. This is erroneous and is not in accord with our history of farm tenancy law. In Kansas the production of wheat is a major farm commodity produced by the seeding of winter wheat in the fall, usually in the month of September or October. Millions of acres are planted to hard winter wheat in the State of Kansas, more than in any other state of the union. Many leases for wheat land are oral leases and basically run from August 1 to August 1, the natural cycle for the annual production of winter wheat. An illustration of the wheat farm lease is found in *Stoppel v. Mastin,* 220 Kan. 667, 556 P.2d 394 (1976). The original term of that lease, although written, was

from August 1, 1956 to August 1, 1957. By reason of the tenants holding over it became an oral lease for the same period of time. The case also involved the summer fallow of wheat ground and the manner of termination of a wheat farm lease of this character.

To construe the foregoing statutes as the court has done is simply to declare that an oral wheat farm lease from August 1 to August 1 is nonexistent in Kansas.

This is a declaratory judgment action and on the facts in this case the tenants Freddie Schmidt and Peggy Schmidt were farming this land since 1950. Prior to that the land was farmed by Freddie Schmidt's father. The land is described as a 160 acre unimproved wheat farm. The original lease was oral insofar as the record discloses.

The evidence in the case discloses the court is confronted with an oral wheat farm lease. Freddie Schmidt, one of the defendants, testified:

"Q.  I would like to know something about the cropping history of this quarter section. What did you farm it to?

"A.  Wheat.

"Q.  Did you farm the whole 160 acres to wheat or was there other practices used on it?

"A.  Well, along with the summer fallow it has been primarily a wheat quarter.

"Q.  In your usual farming practices on this quarter section did you summer fallow some of it each year?

"A.  Yes, I would say every year that I have farmed it there has been a part of it summer fallowed.

"Q.  How much of it was in summer fallow this part year?

"A.  Around twenty-five acres. This past year it is thirty acres, this summer; not a year ago.

"Q.  This summer it is thirty acres?

"A.  Thirty acres.

"Q.  A year ago how many acres of summer fallow was there?

"A.  About twenty-five.

"Q.  How many acres of wheat did you cut off of it in 1976?

"A.  One hundred thirty.

"Q.  When did you complete your wheat cutting on that quarter section this year?

"A.  About July 6th.

"Q.  That is what you would call the last day of harvest in 1976.

"A.  Yes, sir.

"Q.  Have you followed your usual farming practices with regard to farming this quarter this year?

"A.  Yes."

The evidence further established this was a *fall seeded grain crop.* Freddie Schmidt testified:

"Q. When do you like to drill your wheat?
"A. About the last week in September or the first week in October, along in there.
"Q. And the only kind of wheat you grow is winter wheat?
"A. Winter wheat, yes.
"Q. And it is planted in the fall?
"A. Yes.
"Q. And harvested the summer following that?
"A. Yes.
"Q. It would be classed as a fall seeded crop, is that correct?
"A. Yes."

On cross-examination Freddie Schmidt was asked about planting milo on the quarter; he answered as follows:

"A. The landlord prefers wheat to be planted there, so I follow this practice.
"Q. But you could if you reached an agreement with the landlord, you could plant milo, could you not?
"A. It never did make enough money for me."

On redirect examination he testified that the usual farming practice in the last ten years on this particular quarter was wheat and summer fallow for wheat. He was further questioned concerning the possibility of planting grass or milo after the harvest on July 6, 1976, and he testified:

"Q. Have you had any program in your farm program of usual farming practice to grow forage crops such as sudan grass?
"A. No, Sir. It isn't fair to the landlord to plant grass and pasture it. I never did practice that, no.
"Q. Referring back to the question about why you didn't plant this acreage after wheat harvest after July 6th to milo, would you explain to the Court the specific reason you didn't do that?
"A. The best ground that would grow any milo had heavy stubble on it, and to try and get a stand of milo in that, I just don't see how it can be done.
"Q. Would that have been your usual farming practice to have double cropped that land this year?
"A. No.
"Q. Did you have adequate moisture in July of 1976 to plant other crops on this land?
"A. I didn't think so, no."

The petition for declaratory judgment alleged that the plaintiffs purchased this particular quarter section of land on May 20, 1976, and the plaintiffs gave notice to the defendants to terminate the lease. The tenants received this notice on June 30, 1976. The petition specifically alleged:

"The plaintiffs purchased the property expressly subject to the tenant's rights, and the defendants were and are at all times material hereto the tenants of the property. *The defendants are tenants at will and hold a year to year tenancy on the property. Defendants are not tenants of the property by reason of an expired written lease.*" (Emphasis added.)

The plaintiffs further alleged that the fall seeded grain crop previously planted on the quarter section here in question was harvested later than 30 days prior to August 1, 1976, *and the plaintiffs admit the notice was ineffective to terminate the tenancy of such land as of August 1, 1976.*

All of the allegations in the plaintiffs' petition are admitted by the defendants (tenants) as true.

Basically the allegations alleged that a controversy existed with respect to the construction of K.S.A. 58-2505 and K.S.A. 58-2506.

The defendants' answer alleged the 160 acres in question were planted to wheat, a fall seeded grain crop in 1975-1976 crop year, and the crop land was being prepared for seeding wheat for the 1976-1977 crop year in conformance with normal practices in this area. *The evidence established these facts and the trial court made findings consistent therewith.*

In my opinion K.S.A. 58-2506 *does not provide for optional methods of terminating an oral year-to-year farm tenancy lease on a fall seeded grain crop farm* (by either serving a notice to terminate 30 days prior to the day after the last day of harvest, or 30 days prior to March 1).

*This statute means what it says:* An oral year-to-year lease on a fall seeded grain farm has only one termination date, the first day after the last day of harvest or August 1, whichever comes first.

K.S.A. 58-2505 says:

"All tenancies from year to year may be terminated by at least thirty days' notice in writing, given to the tenant *prior to the expiration of the year.*" (Emphasis added.)

K.S.A. 58-2506 provides:

"In cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March: *Provided, however,* That as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, *the notice must fix the termination date of the tenancy* to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first:  .  .  ." (Emphasis added.)

The quarter section of land here in question was orally leased as a winter wheat farm with 130 acres planted in wheat and 30 acres in summer fallow. This is in conformance with normal practices in the area for fall seeded grain cropland. The appellees completed harvesting the 1976 crop on July 6, 1976. The notice they received to terminate the tenancy on June 30, 1976, was only seven days prior thereto. The acreage was planted to a fall seeded grain crop *when the notice to terminate was given.* The land had been prepared in conformance with normal practices in Kiowa County on the date notice to terminate was received.

The summer fallow practice for farming winter wheat ground in the western part of Kansas was before the court in *Stoppel v. Mastin,* supra, where the farming practice by a holdover tenant on summer fallowed ground was considered. Construction of the statute was not held to be affected by the practice of summer fallowing of wheat ground.

The facts in this case clearly disclose that the *proviso clause* in K.S.A. 58-2506 is applicable to this controversy. *The statute specifically* and clearly *says the termination date of the tenancy must be fixed by the notice to take place on the day following the last day of harvesting such crop or crops, or August 1 whichever comes first.* The notice was conceded by the appellants to be defective to terminate the tenancy on July 6, 1976.

Where a notice to terminate a tenancy is ineffective it is void. The notice to terminate a year-to-year tenancy must conform to the statute. (See *Way v. Swain,* 158 Kan. 238, 146 P.2d 414 [1944].)

The court's preoccupation with the expression "is planted," to the exclusion of all other provisions in both K.S.A. 58-2505 and K.S.A. 58-2506, has simply lead the court to an erroneous result. The legislature did not contemplate, I am sure, a notice eight or nine months in advance of the termination of the annual crop year, when a *30 day prior notice* provision was specifically set forth in K.S.A. 58-2505.

If notice is given 30 days in advance by the landlord to terminate an oral farm tenancy lease where the land is seeded to a fall seeded grain crop, prior to the last day of harvest or August 1, whichever comes first, *the cropland "is planted" to a fall seeded grain crop when the notice is given.* K.S.A. 58-2505 clearly requires 30 days' notice *in advance of the annual termination date*

*to terminate an annual farm lease.* In this case July 6, 1976, would have been the termination date and 30 days prior thereto would have been long before June 30, 1976, when the notice was given.

The appellants purchased the quarter section of land here in question on May 20, 1976, and had adequate time to give a valid notice for termination of the farm tenancy wheat farm lease here in question before the last day of harvest in 1976. But they did not do so and their attempt to terminate the lease at the termination of the 1976 harvest season aborted.

The court is *not* concerned in this case with the common-law rule that a tenant is not entitled to a crop sown but not maturing before the expiration of the lease, as the appellants contend (see *Stoppel v. Mastin,* supra; *Kohn v. Babb,* 204 Kan. 245, 250, 461 P.2d 775 [1969]; *Fox v. Flick,* 166 Kan. 533, 203 P.2d 186 [1949]; and *Bank v. Jesch,* 99 Kan. 797, 163 Pac. 150 [1917]). The common law is not applicable. The court is dealing with *statutory law.* Furthermore, the statutes here in question are unambiguous and the use of extrinsic circumstances, such as the legislative history, is immaterial. Even if it were material, the legislative history supports the position taken by the trial court and the position propounded by the appellees herein.

In my opinion the 1975 amendment of K.S.A. 58-2506 had the effect of alleviating the harsh results of the common-law rule heretofore mentioned for farm tenants with fall seeded grain crops, the problem being that the March 1 termination for land with crops harvested in June or July forced termination of a tenancy eight (8) months ahead of time or required the farm to lie idle for a full crop year.

The court's construction of the statute (K.S.A. 58-2506) on the facts in this case, which ignores the existence of an oral farm tenancy wheat lease on a year-to-year basis from August 1 to August 1, is clearly contrary to the purpose expressed in the statute. For example, assume the tenants here, having an annual wheat farm lease on the total acreage of the farm consisting of 160 acres, worked the farm ground in accordance with normal farming practices for a fall seeded grain crop after harvest on July 6, 1976, and had the land completely ready for seeding to wheat by the end of September or the beginning of October 1976; that just prior to seeding the wheat into the ground the tenants received the same notice, as here, from the landlords to terminate the lease.

Under the court's decision the lease would terminate March 1, 1977, and the tenants would forfeit the crop growing on the land if they proceeded to seed the farm ground to wheat after receiving the notice. If the tenants pursued the other alternative and did not seed the ground to wheat, they would forfeit their labor and expense in preparing the land for wheat and they would be required to let the ground lie idle till March 1, because their farm tenancy lease would be effective until March 1 of the succeeding year, and neither the landlord nor the tenant could benefit from its use. Clearly, this frustrates the legislative intention because it perpetuates the very problem the legislature sought to avoid by the 1975 amendment of the statute.

The statutes here under consideration were considered by this court under a different factual situation in *Becker v. McFadden,* 221 Kan. 552, 561 P.2d 416 (1977). On the facts there the farm tenancy lease, although oral, was construed as a March 1—March 1 annual lease. In commenting upon K.S.A. 58-2506 this court said:

"The statute was amended July 1, 1975. *The amendment, fixing a different termination date where fall-seeded grain crops are planted,* is not here involved." (p. 553. Emphasis added.)

In that case the court by a *unanimous decision* recognized that *a different termination date was intended by the statute* where fall seeded grain crops are planted.

It is respectfully submitted the judgment of the lower court should be affirmed.

MILLER, J., dissenting: I concur and join in the dissent of Schroeder, C.J.

The majority has, in my opinion, ignored the clear provisions of the statute requiring the giving of a thirty-day notice prior to the termination date fixed for wheat land: the last day of harvesting, or August 1, whichever comes first.

And, in addition, the majority's ruling requires the land to lay idle for an entire year, to the detriment of the landowners, the tenants, the economy, and the consumer. Under the majority holding, the tenants should have remained in possession of the land until March first—but they could not plant a crop!

The tenants planted a crop, and the majority says "they did so at their own risk." This, I take it, will require the tenants to forfeit

the crop—even though it was planted after the district court held that their tenancy was *not* terminated. As tenants they were *obligated* to farm the land during the pendency of the appeal.

I would affirm the trial court.